UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES LANGONE, as FUND MANAGER )
of the NEW ENGLAND TEAMSTERS AND )
TRUCKING INDUSTRY PENSION FUND, )
)
     Plaintiff, )
) C.A. No. 04cv10039 RCL
v. )
)
DUROD, LIMITED )
)
     Defendant. )

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

1.  Defendant New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund") is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Langone Affidavit ¶ 2).

2.  The Fund has its principal office at and is administered from 535 Boylston Street, Boston, Massachusetts. (Langone Aff. ¶ 1).

3.  The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which has been amended from time to time. (Langone Affidavit ¶ 3; Exhibit 1).

4.  The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the 1997 Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan with amendments through

April 30, 2003 ("2003 Pension Plan" or "2003 Plan").    The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund. (Langone Affidavit ¶ 4; Exhibit 2).

5.    Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements. (Langone Affidavit ¶ 5; Exhibit 2).

6.    Contributing employers to the Fund are defined by Article I, Section 1.09 of the 2003 Plan. (Langone Affidavit ¶ 6; Exhibit 2).

7.    Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 2003 Plan. (Langone Affidavit ¶ 7; Exhibit 2).

8.    The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides, in relevant part:

> (a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
>
> (b) Commencing with the ___ day of _____, _____, and for the duration of the current collective bargaining agreement, between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work

2

> within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . . (Langone Aff. ¶ 10; Exhibit 1).

9. Charles Langone is the Fund Manager, a position he has held since October 1990, and is responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Mr. Langone ensures that contributions from contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of Trustees. (Langone Aff. ¶ 8).

10. Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the Fund on remittance reports required by the Trustees. (Langone Aff. ¶ 11; Exhibit 1).

11. Paragraph (e) of Appendix A of the Trust Agreement entitles the Trustees to audit a contributing employer's payroll and wage records:

> All contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions. (Langone Aff. ¶ 12; Exhibit 1).

12. Paragraph (e) of Appendix A of the Trust Agreement provides that if an employer

> Fail[s] to make contributions by the 20th day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Agreement . . . the Employer shall

>       be liable to the Trustees for all costs of collecting the payments due
>       together with attorneys' fees and such interest, liquidated damages or
>       penalties which the Trustees may assess or establish at their discretion.
>       (Langone Aff. ¶ 13; Exhibit 1).

13.   Defendant Durod, Limited ("Durod") is an employer with a place of business in

      Marshfield, Massachusetts. (Langone Aff. ¶ 14).

14.   In or about 1997, the Central Artery (I-93)/Tunnel (I-90) Project Labor

      Agreement ("PLA") was entered into by and between Bechtel/Parsons

      Brinckerhoff on behalf of the Massachusetts Department of Public Works; the

      Building & Construction Trades Council of the Metropolitan District and its

      affiliated Local Unions; and the Building and Construction Trades Department,

      AFL-CIO and its Affiliated International Unions and their Affiliated Local

      Unions. (Langone Aff. ¶ 15; Exhibit 3).

15.   Article X, Section 2 of the PLA provides:

>       The Contractor agrees to pay contributions to the established employee
>       benefit funds in the amounts designated in the appropriate Schedules A
>       and/or B; provided, however, that the Contractor and the Union agree that
>       only such bona fide employee benefits as accrue to the direct benefit of the
>       employee (such as pension and annuity, health and welfare, vacation,
>       apprenticeship and training funds, etc.) shall be included in this
>       requirement and paid by the Contractor on this Project. Bona fide jointly
>       trusteed benefit plans established or negotiated through collective
>       bargaining during the life of this Agreement may be added.
>
>       The Contractor adopts and agrees to be bound by the written terms of the
>       legally-established Trust Agreements specifying the detailed basis on
>       which payments are to be made into, and benefits paid out of, such Trust
>       Funds. The Contractor authorizes the parties to such Trust Agreements to
>       appoint trustees and successor trustees to administer the Trust Funds and
>       hereby ratifies and accepts the Trustees so appointed as if made by the
>       Contractor. (Langone Aff. ¶ 15; Exhibit 3).

16.    On or about August 1, 1997, a Trucking Issues Committee was formed to address relevant issues regarding the application of the Massachusetts Minimum Wage Law and other wage and benefit issues for truckers and trucking companies who provide support for the Central Artery/Tunnel Project. (Langone Aff. ¶ 16).

17.    As a result of the Trucking Issues Committee's formation, the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA") was negotiated. (Langone Aff. ¶ 16; Exhibit 4).

18.    The members of the Committee consisted of representatives of the trucking industry (trucking subcontractors, brokers, fleet owners, owner/operators), Central Artery/Tunnel Project general contractors, the Massachusetts Highway Department, Bechtel/Parsons Brinckerhoff, Teamsters Local Union No. 379, the Massachusetts Department of Labor and Workforce Development, and the Construction Industries of Massachusetts. (Langone Aff. ¶ 16; Exhibit 4).

19.    Section 8A of the MOA provides that "the Contractors agree that they, or their designated approved Subcontractor, will employ the truckers on the CA/T Project and shall ensure payments on their behalf to the Construction Teamsters Health & Welfare Fund and the New England Teamsters & Trucking Industry Pension Fund as required by the Teamsters Agreement . . ." (Langone Aff. ¶ 16; Exhibit 4).

20.    Section 8B of the MOA states:

> As an alternative method of payment, Project Contractors and Subcontractors who use truck drivers that they consider to be independent contractors shall make fringe benefit fund contributions based on all hours worked by such truck drivers. Project Contractors and Subcontractors that employ this method of payment shall report such hours worked in the same manner as they report the hours worked of employee truck drivers.

5

> The characterization of a truck driver as an independent contractor by a Project Contractor or Subcontractor shall not be binding on the Teamsters, Local 379, the truck drivers so characterized, or the Trustees of the Construction Teamsters Health & Welfare Fund and of the New England Teamsters & Trucking Industry Pension Fund. (Langone Aff. ¶ 16; Exhibit 4).

21. On or about September 24, 1997, the Massachusetts Highway Department, Bechtel Parsons Brinckerhoff, and Teamsters Local Union No. 379 entered into a "Memorandum of Understanding as to Teamster Benefits (MOU)" in accordance with the Central Artery/Tunnel (CA/T) Project Memorandum of Agreement on Trucking Issues. (Langone Aff. ¶ 17; Exhibit 5).

22. Paragraph 1 of the MOU states:

> All employee-drivers who the contractor directly employs and who perform work on the CA/T Project are covered by the CA/T Project Labor Agreement (PLA).    Applicable contributions to the Construction Teamsters' Health and Welfare Fund and the New England Teamsters and Trucking Industry Pension Fund (Funds) must be made on their behalf by their employers and such employee-drivers will receive benefits from the Funds' Plans of Benefits. (Langone Aff. ¶ 17; Exhibit 5).

23. Paragraph 2 of the MOU provides that all owner-operators who are employers by virtue of employing one or more drivers totaling at least 160 hours in the aggregate for work on the CA/T Project during the 6 month period before certification, or who employ one or more drivers totaling at least 600 hours in the aggregate for work at construction sites other than the CA/T Project during the 12 month period before certification, shall be deemed "employers" or "independent contractors," and contributions shall not be required for their work on the CA/T Project. (Langone Aff. ¶ 17; Exhibit 5).

24. Paragraph 3 of the MOU provides that "all owner-operators who provide support for CA/T Project Work who do not qualify under paragraph 2, above, shall be

deemed, for the purposes of the State Prevailing Wage Law and the PLA, Project

employees and contributions must be made on their behalf to the Funds."

(Langone Aff. ¶ 17; Exhibit 5).

25.    On November 13, 1997, Mary Moar of the Fund's Contract Department sent

Durod and Teamsters Local 379 a letter that stated:

> In accordance with information recently received, we have opened the
> above account and started billing. According to our records contributions
> have been received through September 1997.
> This should not be interpreted as acceptance by the Board of Trustees of
> your participation in this Pension Plan.
> Providing the account is paid up to date with no delinquencies, acceptance
> of a new employer is generally a formality and principally involves the
> Board's determination of minimum period of contribution payments
> required before employees may retire, based on the recommendation of
> the Fund's actuaries.
> Until the Employer's participation is accepted by the Board, contributions
> received will be held in escrow, and the Employees reported on this
> account will not receive Pension Credit for these escrow payments.
> Enclosed please find a Questionnaire requesting information pertinent to
> your participation in this Fund.  Please complete this Questionnaire and
> return to this office as soon as possible. (Langone Aff. ¶ 18; Exhibit 6).

26.    On November 13, 1997, Mary Moar sent Durod another letter that stated:

> Enclosed please find remittance report[s] for your use in reporting
> monthly Pension Fund contributions for your employees under the above
> local/code number, for the period October 1997.
> Please fill in the report following the instructions on the reverse side of the
> blue copy and return to this office together with your check for
> contributions, Hereafter you will received preprinted reports each month.
> The Rules of the Fund require that before an Employer may be submitted
> to the board of Trustees for acceptance as a contributor, its account must
> be paid up-to-date and all required documents must be received.
> Therefore, contributions should be forwarded promptly.    Monthly
> payments are due within twenty days after the last day of the month
> reported.
> If you require further assistance, please contact this office. (Langone
> Aff. ¶ 19; Exhibit 7).

27.    In a letter dated November 19, 1997, Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379, wrote to the Fund: "Please open an account for Durod Ltd. They will be working under the Central Artery Tunnel Project Agreement and will not be signing any pension documents." (Langone Aff. ¶ 20; Exhibit 8).

28.    On November 20, 1997, Durod completed the questionnaire from the Fund. In response to the question, "Is your current Collective Bargaining Agreement with the above Employer your first Agreement covering this bargaining unit?", James Roderick, Jr., President of Durod, checked "Yes". (Langone Aff. ¶ 21; Exhibit 9).

29.    On or about March 26, 2002, James R. Roderick, Jr., as President of Durod, entered into an "Exhibit A Certification" whereby Durod assented to the Project Labor Agreement. Paragraph 9 of the Certification states as follows:

> I hereby agree to comply with and be bound to the Project Labor Agreement, Division 1, Special Provisions covering work to be performed on the Central Artery/Tunnel Project. The terms and conditions of the Project Labor Agreement have been entered into by the signatory unions and Bechtel/Parsons Brinckerhoff and shall apply with respect to the work covered by all contracts on said Project. (Langone Aff. ¶ 22; Exhibit 10).

30.    From December 1997 through January 2004, Durod made contributions to the Fund for each month it worked on the Central Artery/Tunnel Project, and submitted remittance reports for those contributions. (Langone Aff. ¶ 23).

31.    After January 2004, Durod stopped making contributions. In the six months prior to January 2004, Durod's average monthly contributions payment to the Fund was $2658.53. (Langone Aff. ¶ 24).

32.  Durod made its contributions to the Fund for the months of June, July, and August 1999 in October 1999, after the date on which they were due. (Langone Aff. ¶ 25).

33.  Durod made its contributions to the Fund for April 2000 in June 2000, after the date on which they were due. (Langone Aff. ¶ 26).

34.  Durod made contributions to the Fund for October 2001 in December 2001, after the date on which they were due. (Langone Aff. ¶ 27).

35.  Durod made contributions to the Fund for September, October, November, and December 2002, along with contributions for January 2003, in April 2003, after the date on which they were due. (Langone Aff. ¶ 28).

36.  Durod made contributions to the Fund for March 2003 in May 2003, after the date on which they were due. (Langone Aff. ¶ 29).

37.  Durod made contributions to the Fund for July 2003 in October 2003, after the date on which they were due. (Langone Aff. ¶ 30).

38.  Durod made contributions to the Fund for August, September, and October 2003 in January 2004, after the date on which they were due. (Langone Aff. ¶ 31).

39.  As a result of the late payments made by Durod on the contributions due, the Fund assessed $457.63 in interest charges against Durod. Durod has not made payment on the accumulated interest. (Langone Aff. ¶ 32).

40.  Durod made pension contributions for May 2000, but underpaid by $87.58. Durod also underpaid its pension contributions for December 2000 by $176.26. (Langone Aff. ¶ 33).

41.   To date, Durod has failed to make any pension contributions since January 2004, and is delinquent in interest and past due contributions for underpayments for a total amount of $736.11. (Langone Aff. ¶ 34; Exhibit 11).

42.   In a letter dated May 14, 2003, Fund Manager Charles Langone notified Durod that it had been selected for an examination of payroll and wage records for the period of January 1, 1997 through December 31, 2002, and requested that Durod make available weekly payroll registers; IRS Forms W-2, 941, and 1099; and OSHA logs where applicable. (Langone Aff. ¶ 35; Exhibit 12).

43.   In a letter dated December 10, 2003, and sent via certified mail to James R. Roderick, Jr., President of Defendant Durod, Counsel for the Fund reiterated the Fund's demand that Durod allow the Fund's auditor to conduct a payroll audit pursuant to the PLA and the Fund's Trust Agreement. (Langone Aff. ¶ 36; Exhibit 13).

44.   Since on or about May 14, 2003, and continuing to the present, Defendant Durod has refused to allow the Fund to conduct a payroll audit and has failed to provide any of the requested documents. (Langone Aff. ¶ 37).

Dated: June ____/ 0 , 2005                    Respectfully submitted,

For the Plaintiff,
CHARLES LANGONE, as
FUND MANAGER of the
NEW ENGLAND TEAMSTERS &
TRUCKING INDUSTRY
PENSION FUND,
By his Attorneys,

Catherine M. Campbell, BBO #549397
Jonathan M. Conti, BBO #657163
Feinberg, Campbell & Zack, P.C.
177 Milk Street, Boston, MA 02109
(617) 338-1976

## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, attorney for the Plaintiff, hereby certify that on this day I mailed a copy of the within document by first class mail, postage prepaid, to Robert W. Galvin, Esq., Galvin & Galvin, SP, 10 Enterprise Street, Suite 3, Duxbury, MA 02332-3315.

Dated: June ____/0 , 2005

Jonathan M. Conti

11