UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>DUROD, LIMITED<br><br>Defendant. | C.A. No. 04cv10039 RCL |

### AFFIDAVIT OF CHARLES LANGONE

I, Charles Langone, under oath and based on my personal knowledge, hereby depose and state the following:

1. My name is Charles Langone and I am the Fund Manager for the New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund"). I have been the Fund Manager since October 1990. The Pension Fund has its principal place of business at 535 Boylston Street, Boston, Massachusetts 02116.

2. The Fund is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

3. The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("the Trust Agreement"), which has been amended from time to time. A true and correct copy of the Trust Agreement is attached as Exhibit 1.

4. The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the 1997 Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan with amendments through April 30, 2003 ("2003 Plan" or "Plan"), attached hereto as Exhibit 2. The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund.

5. Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local Teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements.

6. Contributing employers to the Fund are defined by Article I, Section 1.09 of the 2003 Plan.

7. Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 2003 Plan.

8. As Fund Manager, I am responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Specifically, I ensure that contributions from contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of

Trustees. In addition, I process all appeals of participants and present these appeals to the Board of Trustees.

9. In the performance of my duties, I have personal knowledge of those documents governing the administration of the Fund including, but not limited to, the Trust Agreement, the Pension Plan, the relevant collective bargaining agreements, and the Project Labor Agreement, as well as any interpretative guidelines set forth by the Fund's Board of Trustees regarding Plan administration.

10. The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides that contributions must be made for "each and every employee performing work within the scope of and/or covered by the collective bargaining agreement."

11. Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the Fund on remittance reports required by the Trustees.

12. Paragraph (e) of Appendix A of the Trust Agreement entitles the Trustees to audit a contributing employer's payroll and wage records.

13. Paragraph (e) of Appendix A of the Trust Agreement also provides that if an employer fails to make contributions by the 20th day of the month following the month during which the employees performed work, the Employer shall be liable to the Trustees for all costs of collecting the payments due, plus attorneys' fees, interest, and liquidated damages or penalties.

14. Documents received by the Fund indicate that Defendant Durod, Limited ("Durod") is an employer with a place of business in Marshfield, Massachusetts.

3

15. The Fund received a copy of the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA"), a true and correct copy of which is attached hereto as Exhibit 3.

16. Sometime after August 1, 1997, the Fund received the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA"), a true and correct copy of which is attached hereto as Exhibit 4.

17. Sometime after September 24, 1997, the Fund received the "Memorandum of Understanding as to Teamster Benefits (MOU)" in accordance with the Central Artery/Tunnel (CA/T) Project Memorandum of Agreement on Trucking Issues. A true and correct copy of the MOU is attached hereto as Exhibit 5.

18. On November 13, 1997, Mary Moar of the Fund's Contract Department sent Durod and Teamsters Local 379 a letter, attached hereto as Exhibit 6, indicating that the Fund had opened an account for Durod.

19. On November 13, 1997, Ms. Moar sent Durod another letter, attached hereto as Exhibit 7, which provided remittance reports for Durod to use in reporting monthly Pension Fund contributions.

20. On or about November 21, 1997, the Fund received a letter from Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379, which is attached hereto as Exhibit 8, asking that the Fund open an account for Durod, which would be working on the Central Artery Tunnel Project Agreement.

21. On or about December 3, 1997, the Fund received a completed questionnaire from Durod dated November 20, 1997, which is attached hereto as Exhibit 9.

22. Sometime after March 26, 2002, the Fund received "Exhibit A Certification," a true and correct copy of which is attached hereto as Exhibit 10.

23. From December 1997 through January 2004, Durod made contributions to the Fund for each month it worked on the Central Artery/Tunnel Project, and submitted remittance reports for those contributions.

24. After January 2004, Durod stopped making contributions. In the six months prior to January 2004, Durod's average monthly contributions payment to the Fund was $2658.53.

25. Durod made its contributions to the Fund for the months of June, July, and August 1999 in October 1999, after the date on which they were due.

26. Durod made its contributions to the Fund for the month of April 2000 in June 2000, after the date on which they were due.

27. Durod made contributions to the Fund for October 2001 in December 2001, after the date on which they were due.

28. Durod made contributions to the Fund for September, October, November, and December 2002, along with contributions for January 2003, in April 2003, after the date on which they were due.

29. Durod made contributions to the Fund for March 2003 in May 2003, after the date on which they were due.

30. Durod made contributions to the Fund for July 2003 in October 2003, after the date on which they were due.

31. Durod made contributions to the Fund for August, September, and October 2003 in January 2004, also after the date on which they were due.

32. As a result of the late payments made by Durod on the contributions due, the Fund assessed $457.63 in interest charges against Durod. Durod has not made payment on the accumulated interest.

33. Durod made pension contributions for May 2000, but underpaid by $87.58. Durod also underpaid its pension contributions for December 2000 by $176.26.

34. To date, Durod has failed to make any pension contributions since January 2004, and is delinquent in interest and past due contributions for underpayments for a total amount of $736.11. A copy of the itemized summation of accumulated interest and underpayments is attached hereto as Exhibit 11.

35. In a letter dated May 14, 2003 and attached hereto as Exhibit 12, I notified Durod that it had been selected for an examination of payroll and wage records for the period of January 1, 1997 through December 31, 2002, and requested that Durod make available weekly payroll registers; IRS Forms W-2, 941, and 1099; and OSHA logs where applicable.

36. In a letter dated December 10, 2003, which is attached hereto as Exhibit 13, and sent via certified mail to James R. Roderick, Jr., President of Defendant Durod, Counsel for the Fund reiterated my earlier demand that Durod allow the Fund's auditor to conduct a payroll audit pursuant to the PLA and the Fund's Agreement and Declaration of Trust.

37. Since on or about May 14, 2003, and continuing to the present, Defendant Durod has refused to allow the Fund to conduct a payroll audit and has failed to provide any of the requested documents.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 26th DAY OF MAY, 2005.

_____
Charles Langone