UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*************************************
CHARLES LANGONE, as FUND            *
MANAGER of the NEW ENGLAND          *
TEAMSTERS and TRUCKING              *
INDUSTRY PENSION FUND,              *
        Plaintiff,                  *   C.A. NO. 04CV10039 RCL
                                    *
V.                                  *
                                    *
DUROD, LIMITED                      *
        Defendant.                  *
*************************************
```

**DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS
IN OPPOSITION TO SUMMARY JUDGMENT**

NOW COMES the defendant, Durod, and sets forth the following additional material facts which are offered in opposition to the plaintiff's Motion for Summary Judgment:

1. Durod is a SOMWBA Certified Disadvantaged Business Entity (DBE) whose business consists largely of trucking, excavation and recycling work and has a business address at 130 Claypit Road, Marshfield, Massachusetts.   See Affidavit of James Roderick, Jr. ("Roderick Affidavit") at ¶1.

2. Durod began working on the Central Artery project during May of 1997 for Modern Continental as a subcontractor.   At the time there was no mechanism for the Union to accept contributions from Durod for its union employees, as a result for the months of May through September 1997, Durod gave the employees the cash equivalent

1

of the pension and health & welfare contributions in order to comply state and federal prevailing wage laws.    Roderick Affidavit at ¶ 2.

3.    On October of 1997, Local 397 Business Agent, John Mahoney, demanded that Durod go back to July of 1997 and make all of the pension and health and welfare funds to the union funds.    Durod attempted to explain that it had fulfilled its obligations to the employees to Mr. Mahoney.    Mr. Mahoney indicated that if Durod refused to pay these benefits regardless of whether they had been paid before, he would ensure that Durod would be barred from returning to the project.    As result, Durod, relented and double paid pension and health and welfare contributions.    Roderick Affidavit at ¶3.

4.    Sometime in September of 1998, the pension fund sent Durod a delinquency notice claiming that Durod was late with payments and remittance reports which were required under the Collective Bargaining Agreement, Rules of the Pension Fund, and the Declaration of Trust.    See Exhibit 1 attached to Roderick Affidavit (Delinquency Notice with Handwritten Note from Durod).

5.    Contrary to what pension fund claimed, Durod was delinquent at that time, and in fact, Durod had been working for other subcontractors, Twin Trucking and Zam-Tek and possibly EJ Smith, who were responsible for the pension contributions during this time. Durod informed the pension fund of the error in a faxed handwritten notice on a delinquency notice (Exhibit 1).    Roderick Affidavit at ¶6.

6.      In February of 1999, as a result of an error, Durod sent a letter to the pension fund again explaining another month which it had worked for Zam-Tek and directing that funds wrongly applied, by applied to the December 1998 contribution.   Durod expressed its dissatisfaction which the book-keeping practices of the pension fund and stated that it was disturbed by continuing delinquency notices which were erroneous. Roderick Affidavit at ¶7;  Exhibit 2 (Letter dated February 22, 1999 to Pension Fund).

7.      Between May of 1997 and January of 2004, where Durod did not perform any work on the Central Artery project.     On these months, Durod did not fill out a pension report because Mr. Roderick did not know he had to submit a report for those months at the time.    Roderick Affidavit at 8.

8.      During Durod's work on the Central Artery project, from May of 1997 to January of 2004, Modern Continental, the prime contractor, which Durod understood was ultimately responsible for union contributions as a signatory party to the Teamsters' Union, required that Durod submit certified payrolls on a weekly basis with invoices for payment during the months Durod performed work.   Modern Continental did not pay Durod within the time frames which Durod was supposed to be paid thereby delaying Durod's payments to the union funds on the several occasions cited by Mr. Langone. Roderick Affidavit at ¶9.   This caused economic hardship to Durod and delays in paying the union funds in a timely fashion on several occasions.    Roderick Affudavit at ¶9.

9.  On March 26, 2002, on behalf of Durod, Mr. Roderick signed a Certification which he understood bound Durod to the Project Labor Agreement, Division 1, Special Provisions covering work on the Central Artery/Tunnel Project.  Mr. Roderick believed that this required Durod to be bound to the provisions of the Project Labor Agreement only when working on the Central Artery/Tunnel Project.  Mr. Roderick was never given a copy of these Special Provisions but assumed that it obligated me to make pension and health & welfare contributions in the manner provided under the Project Labor Agreement.  Mr. Roderick also never knew that it obligated me pay for fines, late fees or legal expenses under a Trust Agreement which was apparently referenced in the Project Labor Agreement and which I understood and believed was binding on Modern Continental and the unions.  Neither Durod nor Mr. Roderick were never provided copies of the Trust Agreement.  Roderick Affidavit at ¶10.

10. Durod received the notices from the union that they wished to audit Durod payroll records.  Mr. Roderick with John Mahoney (business agent for local 379), Theresa Shanley (trucking issues coordinator for the Central Artery/Tunnel Project), and Joseph Clougherty (subcontract manager for Modern Continental), and a verbal agreement was made that Modern Continental was willing to provide the certified payrolls from 1997 to then present date directly to the union which the union could match up to the pension contribution reports to avoid this entire process of an audit.  Mr. Roderick does not know the exact date of this meeting but it occurred at the CA/T administrative building in Boston on Kneeland Street sometime after Durod received an initial audit notice. Roderick Affidavit at ¶11.

4

11. From approximately January 2004 through July of 2004, Modern Continental made payment directly to the union funds on behalf of Durod by deducting from payments to Durod the amounts of the respective contributions as a result their own financial problems and the trickle down effect it was having on Durod. Roderick Affidavit at ¶12.

12. Durod was sued before any records were provided by Modern. Roderick Affidavit at ¶13.

13. Durod attempted to resolve this case by offering the records and offering to pay for late fees which it do not feel obligated to pay since the late payments where caused by Modern Continental's late payments to Durod as a subcontractor. Durod refused to pay for legal fees which I have been advised are several thousand dollars and which it did not feel obligated to pay or are reasonable under these circumstances. Roderick Affidavit at ¶14.

                                        Respectfully Submitted
                                        DUROD, LTD.
                                        By its Counsel

DATED:  8/11/2005

                                        _____
                                        Robert E. Galvin, Esq.
                                        Robert W. Galvin, Esq.
                                        10 Enterprise Street, Suite 3
                                        Duxbury, MA  02332-3315
                                        (781) 934-5678
                                        BBO # 184000 REG
                                        BBO # 561397  RWG