UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*************************************
CHARLES LANGONE, as FUND            *
MANAGER of the NEW ENGLAND          *
TEAMSTERS and TRUCKING              *
INDUSTRY PENSION FUND,              *
    Plaintiff,                      *   C.A. NO. 04CV10039 RCL
                                    *
V.                                  *
                                    *
DUROD, LIMITED                      *
    Defendant.                      *
*************************************

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the defendant, Durod, Ltd. (hereinafter "Durod") and hereby submits the following Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment:

### INTRODUCTION

The present dispute involves pension fund litigation allegedly to ensure that an employer, Durod, Ltd. ("Durod") has paid the proper amount pension benefit contributions. The plaintiff, Charles Langone ("Langone"), is the fund manager of the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund"). The defendant, Durod, is a Massachusetts corporation that performs trucking and recycling work. From May of 1997 through January 2004, the defendant, Durod, performed work on the Central Artery/Tunnel Project ("Project") although Durod's workers did not

1

work on the Project every month during this time period and also worked for other "employers" during this time frame. The Pension Fund via this action seeks to conduct an audit of the weekly payroll records from 1997 to the present, IRS Forms W-2, 941 and 1099 from 1997 to present, OSHA logs from 1997 to present, and all records of payment to all of Durod's trucking. The defendant, Durod, denies its is responsible to permit such an extensive audit requested by the Pension Fund, although has agreed that the Pension Fund may audit certified payroll records, pension and health and welfare reports, invoices and checks. Durod has previously offered to pay alleged late fees regardless of when they were incurred without any admission of liability since the cost and expense of contesting the same exceeded the amount of the alleged fees. Durod has refused to pay the Pension Funds attorneys' fees which were reportedly in excess of several thousand dollars. In this opposition, Durod, a non-signatory to the Collective Bargaining Agreement, seeks to limit the timing and extent of the audit, challenge any fees preceding its assent to be bound by the Project Labor Agreement, and oppose any request for attorneys' fees by the Pension Fund.

## SUMMARY OF THE MATERIAL FACTUAL BACKGROUND

The plaintiff, New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund") is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Langone Affidavit ¶ 2). The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which

has been amended from time to time. (Langone Affidavit ¶3; Exhibit 1). Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements. (Langone Affidavit ¶ 5; Exhibit 2).

Contributing employers to the fund are defined by Article I, Section 1.09 of the Rules and Regulations for the New England Teamsters & Trucking Industry Pension Plan "any employer who has been accepted by the Trustees for participation in this Pension Fund . . . <u>provided the employer has signed a copy of the Trust Agreement</u> and <u>is required to make contributions to the Fund by a Collective Bargaining Agreement and/or as approved by the Trustees</u>." See Langone Affidavit ¶ 6; Exhibit 2, §1.09(a)(emphasis supplied).

The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides, in relevant part:

> (a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
>
> (b) Commencing with the _____ day of _____, _____, and for the duration of the current collective bargaining agreement, between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . . (Langone Aff. ¶10; Exhibit 1).

3

Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the fund on remittance reports required by the Trustees. (Langone Aff. ¶ 11; Exhibit 1).   Paragraph (e) of Appendix A of the proposed Standard Participation Agreement in the Trust Agreement entitles the Trustees to audit a contributing employer's payroll and wage records as follows:

> All contributions shall be made at such time and in such manner as the Trustees shall reasonable require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions.

(Langone Aff. ¶ 12; Exhibit 1).

Paragraph (e) of Appendix A of the proposed Standard Participation Agreement in the Trust Agreement provides that if an employer

> Fail[s] to make contributions by the 20th day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Agreement . . . the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish at their discretion.

(Langone Aff. ¶ 13; Exhibit 1).

In or about 1997, the Central Artery (I-93)/tunnel (I-90) Project Labor Agreement ("PLA") was entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works; the Building & Construction Trades Council of the Metropolitan District and its affiliated Local Unions; and the Building and

4

Construction Trades Department, AFL-CIO and its Affiliated International Unions and their Affiliated Local Unions. (Langone Aff. ¶ 15; Exhibit 3).

On or about May of 1997, Modern Continental, a prime contractor and contributing employer to the Fund, engaged Durod, to perform certain trucking work on the Project as a subcontractor.   Roderick Affidavit at ¶3.   Since there was no mechanism in place to make health & welfare and pension contributions to union employees which it employed, Durod, in order to comply with prevailing wage law made payments directly to the union employees from May through September 1997. Roderick Affidavit at ¶4.   In October of 1997, Durod was forced by the union's business agent under the threat of loosing its work to pay a second time to the union contributions to the union health & welfare and pension.   Roderick Affidavit at ¶5. Thereafter, in accordance with its understanding to work on the job, Durod submitted weekly certified payroll to Modern Continental and pension reports for any month in which Durod performed work on the Project.   Roderick Affidavit at ¶9.   In addition, Durod, submitted monthly pension reports to the union between December of 1997 and January 2004.   Plaintiff's Statement of Facts at ¶30.

Occasionally, over the years, the Fund threatened Durod about delinquencies which turned out to be erroneous through early 1999 and were explained by Durod in correspondence to the Fund.   See Exhibits 1 and 2 to Roderick Affidavit.   Some of the perceived delinquencies were explained by reference to the fact that Durod's employees worked for other contractors who in turn made pension contributions for these employees. Id.   Also, occasionally, over the years, Durod admittedly did not timely

5

make contributions to the Fund as a result of Modern Continental's failure to pay Durod in accordance with law as a SOMWBA Certfied Disadvantaged Business Enterprise.

Under no circumstances had Durod agreed to sign any documents binding it to the Project Labor Agreement until March 26, 2002, when James Roderick, Jr., signed a Certification, assenting to be bound by the Project Labor Agreement. Paragraph 9 of the Certification states as follows:

> I herby agree to comply with and be bound to the Project Labor Agreement, Division 1, Special Provisions covering work to be performed on the Central Artery/Tunnel Project. The terms and conditions of the Project Labor Agreement have been entered into by the signatory unions and Bechtel/Parsons Brinckerhoff and shall apply with respect to the work covered by all contracts on said Project.

(Langone Aff. ¶ 22; Exhibit 10; Roderick Affidavit at ¶10).

Roderick signed this certification as a requirement of continued employment and believing that it did not make Durod a union company but believing that it required union contributions in the manner set forth in the Project Labor Agreement. Roderick Affidavit at ¶10. Roderick was never provided with the Trust Agreement. Id.

Durod ultimately received a demand to audit its payroll and wage records from the union's pension fund. Plaintiff's Statement of Facts ¶¶42,44. Thereafter, a meeting was held at the CA/T Project administration building on Kneeland Street in Boston at which Durod, Modern Continental, the union's business agent, and the CA/T trucking coordinator were present and agreed that as an alternative to an audit Modern Continental, as the contributing employer, would provide its certified payroll records which it could match with Durod's pension reports, to corroborate that the proper pension payments were being made.

6

In January 2004 through July 2004, Modern Continental, expressly undertook responsibility for paying Durod's union pension contributions by deducting the contributions from Durod's payments and sending this money directly to the union pension funds.   Roderick Affidavit at ¶12.   Thereafter, when Durod, worked on the Project it submitted monthly pension reports and made the required contributions.

Durod has offered an audit of its records once they were gathered, offered to pay the $700.00 in late fees regardless of whether it was justified or not, but refused to pay for counsel fees which are neither justified or reasonable.

## ARGUMENT

A.   The Summary Judgment Standard.

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Langone v. Russo Bros., Inc., 964 F.Supp. 24, 27-28 (1996) (quoting Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir.1995), *cert. denied,* 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (quoting Rule 56, Fed.R.Civ.P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id at 28 (quoting National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.), *cert. denied,* 515 U.S.

1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)). Likewise, " 'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Id. (quoting Smith v. F.W. Morse & Company, Inc., 76 F.3d 413, 428 (1st Cir.1996)).   Since there is either an issue of material fact concerning the rights and duties of the parties concerning their obligations to one another particularly over the time and scope of audit rights and responsibilities for late fees and counsel fees and/or the plaintiff cannot establish it is entitled to judgment as a matter of law, the plaintiff's summary judgment motion should be denied.   In the alternative, if the defendant's facts are undisputed, then the defendant requests that an audit be ordered and ordered limited as requested by the defendant, Durod, along with an order denying late fees and counsel fees.

B.   Durod was not bound by the Project Labor Agreement until, at best, it signed an Assent on or about March 26, 2002.

The plaintiff, Langone, initially argues that Durod is bound to submit to an audit of its payroll and wage records over a seven year period from January 1, 1997 through January 2004 based on the fact that it made union pension contributions since December 1997 and the fact that the union opened an account for it to make contributions.   This argument is contrary to the union's own express definition of who is a "contributing employer" pursuant to Section 1.09(a) of the Rules and Regulations of the Industry Pension Plan which defines such an employer as one who "sign[s] the copy of the Trust Agreement [(or the Standard Participation Form)] and is required to make contributions to the Fund by a Collective Bargaining Agreement and/or is approved by the Trustees."   See Langone

8

Affidavit and attached Exhibit 2 thereto.    There is absolutely no evidence that Durod or its representatives <u>ever</u> signed any Trust Agreement form or was making any contributions to the Fund under a Collective Bargaining Agreement until at best March 26, 2002. Roderick Affidavit at ¶10.    Even then, there is no evidence offered by the plaintiff, that Durod signed the Trust Agreement although it is clearly stated in its assent that it was then making contributions pursuant to the Project Labor Agreement.    See Langone Affidavit and attached Exhibit 10 thereto.    In fact, it is inconceivable that the plaintiff, Langone, would argue that there is no genuine issue of material fact that Durod was bound until at least Durod executing an Certification containing its assent to be bound by the Project Labor Agreement.    See <u>Gariup v. Birchler Ceiling & Interior Co.</u>, 777 F.2d 370, 376 (7th Cir. 1985)(employer became party to collective bargaining agreement when it signed Assent of Participation form).    Through that date, Durod, maintains that it never expressed a manifest intent to do anything other than to make contributions.    In fact, the union seemed to understand this when it acknowledged on November 19, 1997 that "they [Durod] . . . will not be signing any pension documents."    See Plaintiff's Statement of Facts ¶27 and Exhibit 8 to Langone Affidavit.    Based on the foregoing, Durod, requests that any late fees, audit rights and any other fees pre-dating March 26, 2002, be denied.    Since there is no signed Trust Agreement, Durod, further requests that any late fees, audit rights and other fees associated with this case be denied.


C.    <u>Since Durod evidenced an Assent on or about March 26, 2002, extrinsic evidence is not available to evidence a contrary intent prior thereto.</u>

9

The plaintiff, Langone, next citing contractual ambiguity language, claims that extrinsic evidence should be used to evidence intent to be bound. The defendant, Durod, maintains that there was never any misunderstanding or ambiguity in the union documentation about Durod's status. Quite clearly, at least until, March 26, 2002, Durod clearly was not a signatory to any document manifesting an intention to be bound to the Project Labor Agreement. Accordingly, all of the fees and requirements of the Trust Agreement through that date are inapplicable at least to Durod. Moreover, Modern Continental, the corporation which was unmistakably bound as a contributing employer, was always ultimately responsible for making timely and accurate contributions to the union funds. In fact, its conduct, adversely effected the ability of Durod's efforts to facilitate payments for its union employees over the years as set forth in Mr. Roderick's affidavit.

D.   The Fund is not entitled to payment of interest and underpayments or any other fees.

Citing only the Trust Agreement, a document which Durod never signed, the plaintiff, Langone claims a right to assess fees, interest, damages and attorneys' fees. Through March 26, 2002, there is absolutely no basis in law or fact for such a claim. In addition, had the Fund obtained records from Durod's prime contractor, Modern Continental, as Durod believed, there would have been no necessity for a suit of any type. In fact, Durod, has always been willing to submit to an audit relating to work on the Project although it never believed it was obligated to turn over documents other than payroll and

wage records for any work unrelated of the Project.    In addition, Durod has always been willing to pay the late fees regardless of whether they were owed to avoid the cost of litigating this matter.    The only issue remaining involves the Funds counsel fees which were advisedly several thousand dollars.    Durod is adamantly opposed to such fees given the ability of the Fund to satisfy itself from Modern Continental which it elected not to do and given that considerable effort was made in this litigation to re-review five years of payroll and wage records pre-dating the assent signed by Durod.

## CONCLUSION

Since the plaintiff, Langone, cannot demonstrate on the record, the absence of a triable issue of material fact and/or that it is entitled to judgment as a matter of law as proposed, its motion for summary judgment should be denied.    In the event that the Court were to determine that there are no material facts concerning the status of Durod after March 26, 2002, Durod submits that this Court could enter an order requiring a circumscribed audit at the cost and expense of the Fund from that date forward and not involving any unrelated work.    Durod would remain opposed to any fees since any fees have been greatly exceeded by its own cost to oppose an examination of records and defend against the imposition of unjustified fees.

Respectfully Submitted
DUROD, LTD.
By its Counsel

DATED: 8/11/2005

                                                Robert E. Galvin, Esq.
Robert W. Galvin, Esq.
10 Enterprise Street, Suite 3
Duxbury, MA 02332-3315
(781) 934-5678
BBO # 184000 REG
BBO # 561397 RWG

## CERTIFICATE OF SERVICE

I, Robert W. Galvin, Esq., hereby state that I have this 12th day of August, 2005 delivered a copy of this Defendant's Memorandum of Law in Support of its Opposition to Plaintiff's Motion for Summary Judgment to the Plaintiff's Counsel, Jonathan Conti, Esq., Feinberg, Campbell & Zack, at 177 Milk Street, Boston, MA 02109.

DATED: August 12, 2005

_____
Robert W. Galvin, Esq.