UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*************************************
CHARLES LANGONE, as FUND          *
MANAGER of the NEW ENGLAND        *
TEAMSTERS and TRUCKING            *
INDUSTRY PENSION FUND,            *
        Plaintiff,                *    C.A. NO. 04CV10039 RCL
                                  *
V.                                *
                                  *
DUROD, LIMITED                    *
        Defendant.                *
*************************************
```

AFFIDAVIT OF JAMES RODERICK, JR.

I, James Roderick, Jr., hereby depose and state under oath as follows:

1.   My name is James Roderick, Jr.  I am the president of Durod, Ltd.  I have personal knowledge of all of the facts stated herein, excepting those which I have stated to be on information and belief, which I also believe to be true.

2.   Durod is a SOMWBA Certified Disadvantaged Business Entity (DBE) whose business consists largely of trucking, excavation and recycling work and has a business address at 130 Claypit Road, Marshfield, Massachusetts.

3.   Durod began working on the Central Artery project during May of 1997 for Modern Continental as a subcontractor.  At the time there was no mechanism for the Union to accept contributions from Durod for its union employees, as a result for the months of May through September 1997, Durod gave the employees the cash equivalent

of the pension and health & welfare contributions in order to comply state and federal prevailing wage laws.

4.      On October of 1997, Local 397 Business Agent, John Mahoney, demanded that Durod go back to July of 1997 and make all of the pension and health and welfare funds to the union funds.    Durod attempted to explain that it had fulfilled its obligations to the employees to Mr. Mahoney.    Mr. Mahoney indicated that if Durod refused to pay these benefits regardless of whether they had been paid before, he would ensure that Durod would be barred from returning to the project.    As result, Durod, relented and double paid pension and health and welfare contributions.

5.      Sometime in September of 1998, the pension fund sent Durod a delinquency notice claiming that Durod was late with payments and remittance reports which were required under the Collective Bargaining Agreement, Rules of the Pension Fund, and the Declaration of Trust.    See Exhibit 1 attached hereto.

6.      Contrary to what pension fund said we were not delinquent at that time, and in fact, Durod had been working for other subcontractors, Twin Trucking and Zam-Tek and possibly EJ Smith, who were responsible for the pension contributions during this time. Durod informed the pension fund of the error in a faxed handwritten notice on a delinquency notice (Exhibit 1).

7. In February of 1999, as a result of an error I observed, I directed a letter to the pension fund again explaining another month which I worked for Zam-Tek and directing that funds be applied to the December 1998 required contribution. I also reiterated my dissatisfaction which the book-keeping practices of the pension fund and that I was disturbed by continuing delinquency notices which were erroneous. See Exhibit 2.

8. There were a number of months between May of 1997 and January of 2004, where Durod did not perform any work on the Central Artery project. On these months, I did not fill out a pension report because I did not know I had to submit a report at the time.

9. During Durod's work on the Central Artery project, from May of 1997 to January of 2004, Modern Continental, the prime contractor, which I understood was ultimately responsible for union contributions as a signatory party to the Teamsters' Union, required that we submit certified payrolls on a weekly basis with invoices for payment during the months Durod performed work. Modern Continental did not pay Durod within the time frames which Durod was supposed to be paid thereby delaying Durod's payments to the union funds on the several occasions cited by Mr. Langone. This caused economic hardship to Durod and delays in paying the union funds in a timely fashion on several occasions.

10. On March 26, 2002, on behalf of Durod, I signed a Certification which I understood bound Durod to the Project Labor Agreement, Division 1, Special Provisions

covering work on the Central Artery/Tunnel Project. I believed that this required Durod to be bound to the provisions of the Project Labor Agreement only when working on the Central Artery/Tunnel Project. I was never given a copy of these Special Provisions but assumed that it obligated me to make pension and health & welfare contributions in the manner provided under the Project Labor Agreement. I never knew that it obligated me pay for fines, late fees or legal expenses under a Trust Agreement which was apparently referenced in the Project Labor Agreement and which I understood and believed was binding on Modern Continental and the unions. Durod and I were never provided copies of the Trust Agreement. In fact, Durod never said one way or another that wanted to be a union-only company.

11. I do have a recollection of receiving the notices from the union that they wished to audit Durod payroll records. I met with John Mahoney (business agent for local 379), Theresa Shanley (trucking issues coordinator for the Central Artery/Tunnel Project), and Joseph Clougherty (subcontract manager for Modern Continental), and a verbal agreement was made that Modern Continental was willing to provide the certified payrolls from 1997 to then present date directly to the union which the union could match up to the pension contribution reports to avoid this entire process of an audit. I do not know the exact date of this meeting but it occurred at the CA/T administrative building in Boston on Kneeland Street sometime after I received an initial audit notice.

12. From approximately January 2004 through July of 2004, Modern Continental made payment directly to the union funds on behalf of Durod by deducting from

payments to Durod the amounts of the respective contributions as a result their own financial problems and the trickle down effect it was having on Durod.

13. The next thing I heard was that Durod was being sued for the right to audit which Durod does not protest excepting for the timing and scope of the audit. I do not believe that there is any right to audit before Durod assented to the Project Labor Agreement in 2002 and I do not believe that there is any right to examine anything other than payroll records and pension reports for the months which Durod, not Modern, was making contributions.

14. It took me many months to gather records from 1997 to 2004 which I gathered after the notice of the motion. I have attempted to resolve this case by offering the records and offering to pay for late fees which I do not feel obligated to pay since the late payments where caused by Modern Continental's late payments to Durod as a subcontractor. I refused to pay for legal fees which I have been advised are several thousand dollars and I do not feel obligated to pay or are reasonable under these circumstances.

15. In my view that the audit is nothing but harassment. I feel also that if the audit were to corroborated my claims of double-payment that Durod should be reimbursed for its costs, expenses and attorneys' fees.

SIGNED UNDER THE PENALTIES OF PERJURY

Dated: 8/11/2005

_James Roderick, Jr._