UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>DUROD, LIMITED<br><br>Defendant. | C.A. No. 04cv10039 RCL |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

Plaintiff Charles Langone, as Fund Manager of the New England Teamsters and Trucking Industry Pension Fund, moves for summary judgment against Defendant Durod, Limited. Defendant Durod has failed to make pension contributions to the Fund, owes past due interest and underpayments, and has refused to comply with Plaintiff's request for a payroll audit.

Defendant maintains that it did not become bound to the terms of the Project Labor Agreement, or the Pension Fund's Trust Agreement, until March 26, 2002. Defendant's attempt to evade its pre-2002 obligations to the Pension Fund must be rejected, however, because Defendant, as a participating contractor, is bound to the terms of the Project Labor Agreement (and subsequent Memorandums of Agreement and Understanding), as well as to the terms of the Trust Agreement, and because Defendant's course of conduct in making

contributions to the Pension Fund from September 1997 through February 2002 manifested an intent to be bound to the Project Labor Agreement and Trust Agreement.

II.   ARGUMENT

    A. <u>Durod is Bound to the Terms of the Project Labor Agreement and is Required to Make Pension Contributions to the Fund.</u>

As noted in Plaintiff's initial Memorandum of Law in Support of His Motion for Summary Judgment, Article II, Section 2(b) provides that the Project Labor Agreement ("PLA") shall apply to all subcontractors of signatory contractors:

> It is agreed that all direct subcontractors of a Contractor, of whatever tier, who have been awarded contracts for work covered by this Agreement on or after the effective date of this Agreement shall be required to accept and be bound by the terms and conditions of this Agreement. (Exh. 3).[1]

In short, then, any contractor or subcontractor who works on the Central Artery Tunnel Project is required to abide by the terms of the Project Labor Agreement. Durod is one such subcontractor. In turn, by agreeing to the PLA, Durod is also bound to the terms of the subsequent Memorandum of Agreement ("MOA"), which specifically requires that contractors or their designated approved subcontractors "will employ the truckers on the CA/T Project and shall ensure payments on their behalf to . . . the New England Teamsters & Trucking Industry Pension Fund as required by the Teamsters Agreement." (Exh. 4).

Thus, an employer who works on the Central Artery Tunnel Project is required, in order to continue working on said project, to abide by the terms of the PLA, the MOA, and the subsequent Memorandum of Understanding ("MOU"). The MOU specifically states:

> ***All employee drivers who the contractor directly employs and who perform work on the CA/T Project are covered by the CA/T Project Labor Agreement.*** Applicable contributions to the *Construction Teamsters' Health and Welfare Fund* and the *New England Teamsters and Trucking Industry Pension Fund*(Funds) must

---

[1] Unless otherwise noted, all exhibits cited to herein are to those attached to Charles Langone's Affidavit, which was submitted with Plaintiff's initial Motion for Summary Judgment.

be made on their behalf by their employers and such employee-drivers will receive benefits from the Funds' Plans of Benefits. (Exh. 5).

Durod's claim that it was "forced by the union's business agent under the threat of loosing [sic] its work" to make contributions to the pension fund (Defendant's Opposition to Summary Judgment at 5), must be rejected as pure hyperbole. This is not a situation in which the Union attempted to force contributions from Durod by unlawful means for unlawful purposes; rather, it was a requirement of the collectively bargained PLA that all contractors and subcontractors make such contribution payments.

Furthermore, by accepting the terms of the PLA, Durod agreed to be bound by the terms of the Fund's Trust Agreement, since a participating contractor "adopts and agrees to be bound by the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds." (Exh. 1). Durod is therefore required to make contributions to the Pension Fund based upon the terms of the PLA, MOA and MOU.

    B.    <u>There is a Written Agreement that Provides a Detailed Basis for the Contributions to the Fund</u>.

While it is true that Durod did not sign the Project Labor Agreement, the MOA, the MOU, or the Fund's Trust Agreement, "a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement." *Bricklayers Local 21 v. Banner Restoration, Incorporated*, 385 F.3d 761, 766 (7th Cir. 2004).

Defendant appears to be arguing that the required monthly pension contributions do not comply with Section 302(c)(5) of the Labor Management Relations Act because there is no signed agreement between Durod and the Fund. While Section 302 "generally forbids employer payments to representatives of employees," it "contains an exception for payments

3

made in conformity with the terms 'specified in a written agreement with the employer.'" *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 769, citing 29 U.S.C. § 186(c)(5)(B). Defendant's argument that there must be a signed agreement must be rejected, however, because "Section 302(c)(5)(B) does not require a signed agreement; it merely requires a 'written one'". *Id.* at 770.

In addition, under Section 302(c)(5)(B), "any written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, the 'detailed basis' on which contributions are to be made." *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 771, n.9, quoting *Guthart v. White,* 263 F.3d 1099, 1103 (9th Cir. 2001). Here, the "written agreement" consists of the PLA, MOU, and MOA, which, collectively, clearly spell out the contributions to be made. These documents, plus the Fund's Trust Agreement, referenced therein, provide a detailed basis upon which Durod is to make contributions to the Fund.

Defendant also attempts to argue that contributions are not required because it never signed the Fund's Trust Agreement, but that argument fails for the same reason. "Employers are not required to be 'signatories' to the actual trust agreement. The only requirement is that there is a 'written agreement' detailing the basis for payments." *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Mergentime Corporation,* 743 F.Supp. 422 (D. Md. 1990).

  C. <u>Defendant's Course of Conduct Manifested an Intent to be Bound by the Terms of the Project Labor Agreement and the Fund's Trust Agreement</u>.

"A collective bargaining agreement is not dependent on the reduction in writing of the parties' intention to be bound' . . . rather, 'all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" *Bricklayers Local 21 v.*

*Banner Restoration, Incorporated,* 385 F.3d 761, 766 (7th Cir. 2004), quoting *Gariup v. Birchler Ceiling and Interior Co.,* 777 F.2d 370, 373 (7th Cir. 1985).

In or about September 1997, Durod began making contributions on the Central Artery/Tunnel Project. Durod opened an account with the Fund to make contributions for their employees working on the Project, and agreed to be bound by the terms of the Project Labor Agreement. Durod's assent to the PLA is evidenced by the November 13, 1997 letter from the Fund to Durod in which the Fund stated that it had opened an account and started billing:

> In accordance with information recently received, *we have opened the above account and started billing. According to our records contributions have been received through September 1997.* (Exh. 6).

The November 13, 1997 letter also requested that Durod complete a questionnaire prior to the Fund's accepting it as a contributing Employer, and Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379, in a letter sent to the Fund dated November 19, 1997, wrote: "Please open an account for Durod Ltd. *They will be working under the Central Artery Tunnel Project Agreement* and will not be signing any pension documents." (Exhibit 8). Durod then completed the aforementioned questionnaire dated November 20, 1997, and *checked the box marked "yes" indicating that its "current Collective Bargaining Agreement" was its first for the unit represented by Teamsters Local 379*. (Exhibit 9). Clearly, the collective bargaining agreement that Durod referred to in the questionnaire was the Project Labor Agreement, even if it never formally signed the PLA.

Durod's manifestation of an intent to abide by the terms of the PLA and the Fund's Trust Agreement is further evidenced by the fact that from September 1997 through

5

February 2002 (and continuing thereafter), Durod admittedly made contributions to the Fund for all work performed on the Central Artery Tunnel Project. *In paragraph 30 of its Response to Plaintiff's Statement of Undisputed Facts, Durod admits that "From December 1997 through January 2004, Durod made contributions to the Fund for each month it worked on the Central Artery/Tunnel Project, and submitted remittance reports for those contributions."* (Defendant's Response to Plaintiff's Statement of Undisputed Material Facts at ¶ 30, p.11). Durod admitted this statement of fact, and added that "contributions were made prior to December 1997." The remittance reports issued by the Fund and admittedly completed by Durod listed each employee, his social security number, and his hours of work. (Affidavit of Marchelle Cunningham, ¶ 3). When submitting the remittance reports, Durod included a check for the month's contributions to the Fund.² (Cunningham Aff. ¶ 4). In fact, between 1997 and 2000, Durod reported 17,454 hours to the Fund for employees working on the Central Artery Tunnel Project. (Cunningham Aff., ¶ 5; Exh. A).

In *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d 761, 766 (7th Cir. 2004), the employer never signed a collective bargaining agreement with the union but operated in a manner consistent with the obligations laid out in the collective bargaining agreement. Between June of 1991 and March of 1998, the company submitted monthly fringe benefit contributions and contribution reports to the union's fringe benefit funds as required by the terms of the collective bargaining agreement. *Id.* at 764. The contribution reports listed the employees' names and social security numbers, and the company sent

---

² Durod did not always make contributions to the Fund in a timely manner, but contributions were made through the time period of 1997 through February 2002, and beyond.

checks to the Funds for the contribution payments. The employer also remitted union dues and cooperated in an audit. *Id.* at 766. Based upon these actions, the Seventh Circuit ruled:

> The District Court was entitled to conclude that [the employer's] seven-year course of conduct manifested an intent to be bound to the terms of the collective bargaining agreement. Although [the employer] never signed the collective bargaining agreement, the company's regular monthly contributions, payment of union wages, remission of union dues, failure to challenge jurisdictional authority covered by the collective bargaining agreement and other activities consistent with the conduct of a signatory constitute acceptance by performance.

*Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 769.

Thus, as in *Banner Restoration*, Durod engaged in a pattern of conduct for a number of years that clearly manifested an intent to be bound by the PLA and the Fund's Trust Agreement. It made contributions starting in 1997 and continuing to the present, and completed the Fund's remittance reports when making those contributions. It therefore cannot now claim that it never intended to be bound by the terms of the PLA or Trust Agreement because it never signed either document.

> D.  **Durod is Required to Submit to an Audit, Pay Interest on Past Due Contributions, and Rectify any Underpayments.**

In its Opposition, Durod states that up until March 26, 2002 (when it signed the Certification reconfirming its assent to the PLA and Trust Agreement), it "never expressed a manifest intent to do anything other than to make contributions." (Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 9).

Defendant therefore admits that it manifested an intent to make contributions, an obligation that is drawn from the terms of the PLA and the Fund's Trust Agreement. Yet, it is seemingly claiming that it is not bound by any of the other terms of the Trust Agreement, aside from the making of contributions in the manner and amounts dictated by the PLA and Trust Agreement. By admitting that it is bound to make contributions to the Fund, and

7

making those contributions on the Fund's remittance reports, however, Durod has bound itself to all of the applicable terms of those agreements. The PLA specifically provides in Article X, Section 2 that a participating contractor "agrees to pay contributions to the established employee benefit funds in the amounts designated," and also "adopts and agrees to be bound by the written terms of the legally-established Trust Agreements. . ." (Exh. 3).

Thus, any argument that Durod only agreed to make contributions, but not to submit to an audit, or to pay interest and attorneys' fees, must be rejected. See: *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Mergentime Corporation*, 743 F.Supp. 422 (D.Md. 1990), (By admitting liability for unpaid contributions, "defendants cannot deny that they agreed to the terms of the collective bargaining agreements which required payments to the trust funds," and therefore were also required to make payment of liquidated damages as required by the trust agreement). *Id.* at 427.

Durod cannot pick and choose which of the terms of the PLA and Trust Agreement apply to it. By admitting its responsibility to make contributions, and by also engaging in conduct manifesting such an intent, Durod cannot now claim that only certain portions of the Trust Agreement apply. Durod is therefore bound by the terms of the Trust Agreement that provide for an audit, as well as the paying of interest and attorney fees.

    E.    <u>Durod Must Pay the Fund's Attorney Fees</u>.

Article V, Section 4 of the Trust Agreement provides that when there is a default in payment by an employer, the Trustees are entitled to "reasonable attorneys' fees and costs" in connection with an action to collect delinquent contributions. (Exh. 1).

Defendant claims that it should not have to pay Plaintiff's legal fees and costs in part because the Fund should have obtained the records from Modern Continental, "Durod's

8

prime contractor." (Defendant's Opposition at 10). Modern's role is immaterial here; the Fund is entitled to review Durod's records, and is not obligated to chase after a third party concerning Durod's liabilities. Durod had every opportunity to bring Modern Continental into this lawsuit as a third party defendant but never did so. (Affidavit of Jonathan M. Conti ¶¶ 8, 9).

Moreover, the considerable attorneys' fees that the Fund has incurred in this matter occurred as a direct result of Durod's actions over the past year and a half. Plaintiff filed its Complaint on January 8, 2005. (Aff., Conti ¶2). The Summons and Complaint were served on Durod on January 14, 2004. (Conti Aff., ¶1). Defendant then requested, and Plaintiff granted, two extensions of time in which Defendant was to file its Answer to Plaintiff's Complaint. (Conti Aff., ¶4). Durod finally filed its Answer on March 19, 2004. (Conti Aff. ¶5), and on April 29, 2004, the Court issued a Settlement Order of Dismissal. (Conti Aff., ¶6). Durod refused to execute the Settlement Agreement, however, forcing Plaintiff to file a Motion to Reopen the case on June 29, 2004. (Conti Aff., ¶7)

The parties then attended a scheduling conference on November 10, 2004. (Conti Aff., ¶8). The Court instructed Durod at that time to supply the documents requested in Plaintiff's Complaint concerning the Central Artery Tunnel Project. (Conti Aff., ¶8). Durod never provided those documents, and never attempted to add Modern Continental as a Third Party Defendant, as the Court suggested. (Conti Aff., ¶¶8, 9). Plaintiff was therefore forced to file a Motion for Summary Judgment on June 10, 2005. (Conti Aff., ¶10).

As a result, Plaintiff incurred considerable attorneys' fees and costs which would not have been necessary had Durod not backed out of the Settlement Agreement or provided the

9

documents as requested. By doing so, Durod has extended the litigation in this matter an additional fifteen months.

Durod is therefore obligated to make payment of the Fund's attorney's fees and costs.

III. CONCLUSION

For all of the foregoing reasons, and on the record as a whole, the Court should grant Plaintiff's Motion for Summary Judgment in its entirety, including the awarding of attorneys' fees and costs.

Dated: September 28, 2005

Respectfully submitted,

For the Plaintiff,
CHARLES LANGONE, as
FUND MANAGER of the
NEW ENGLAND TEAMSTERS &
TRUCKING INDUSTRY PENSION FUND,

By his Attorneys,

Catherine M. Campbell, BBO #549397
Jonathan M. Conti, BBO #657163
Feinberg, Campbell & Zack, P.C.
177 Milk Street, Boston, MA 02109
(617) 338-1976

**CERTIFICATE OF SERVICE**

I, Jonathan M. Conti, attorney for the Plaintiff, hereby certify that on this day I mailed a copy of the within document by first class mail, postage prepaid, to Robert W. Galvin, Esq., Galvin & Galvin, SP, 10 Enterprise Street, Suite 3, Duxbury, MA 02332-3315.

Dated: September 28, 2005

Jonathan M. Conti