UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, | ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No.  04cv10039 RCL |
| v. | ) ) ) | |
| DUROD, LIMITED | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
RULE 59(E) MOTION FOR RECONSIDERATION OF THE COURT'S
DECISION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On November 21, 2005, this Court denied Plaintiff New England Teamsters and Trucking Industry Pension Fund's Motion for Summary Judgment.  Plaintiff now files this Motion for Reconsideration pursuant to Fed.R.Civ.P. 59(e) based upon the discovery of new evidence not available at the time the Court ruled on Plaintiff's Motion for Summary Judgment. Plaintiff asserts that had Plaintiff had this evidence in its possession at the time it filed its Motion for Summary Judgment, the Court would have granted Plaintiff's Motion.

Specifically, and as more fully described below, the Court denied Plaintiff's Motion for Summary Judgment on the basis that there was insufficient evidence to suggest that the Fund had ever accepted Defendant Durod, Ltd., as a contributing employer in the Fund and, as a result, that there was a material issue of fact as to whether Durod agreed to be bound by the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") and, by incorporation, the terms of the Fund's Trust Agreement obligating Durod to make pension contributions due prior to March 2002 (when

Durod signed an Assent to the Project Labor Agreement) and to submit to an audit for that time period.

The newly discovered evidence establishes:

1. At the Fund's March 1998 Trustees Meeting, the Trustees of the Fund formally accepted Durod as a "Contributing Employer" in the Fund with a participation commencement date of July 1, 1997;

2. The Fund's Manager, Charles Langone, sent a letter to Durod dated March 23, 1998 confirming Durod's acceptance by the Trustees as a Contributing Employer in the Fund.

This new evidence, coupled with the terms of the PLA, Durod's acknowledgement in 1997 that it had a collective bargaining agreement pursuant to which it was required to make contributions to the Fund, and Durod's course of conduct in making $374,079.36 in contributions to the Fund between July 1997 and February 2002, can only lead to the conclusion that Durod agreed to be bound to the terms of the PLA and the Fund's Trust Agreement, and is therefore obligated to make contributions and submit to an audit by the Fund concerning its work on the Central Artery Tunnel project between July 1, 1997 and the present.

I.   Standard of Review

A motion for reconsideration "is properly granted only upon a showing of manifest error of law or in light of newly discovered evidence." *Romero-Villanueva v. Puerto Rico Electric Power Authority*, 112 Fed. Appx. 74, 76 (1st Cir. 2004). Rule 59(e) of the Federal Rules of Civil Procedure provides litigants with a vehicle to present the district court with evidence uncovered after the entry of judgment. *Emmanuel v. International Brotherhood of Teamsters, Local Union No. 25,* 426 F.3d 416, 422 (1st Cir. 2005). "Although Rule 59(e) refers to judgment (i.e. rulings that are appealable),

*Rule 59(e)*'s legal standards will be applied to motions for reconsideration of interlocutory orders. *Vega v. Hernandez,* 381 F.Supp. 2d 31, 35 (D.P.R. 2005). "A motion for reconsideration of an order to grant [deny] summary judgment is treated as a motion under *Rule 59(e) of the Federal Rules of Civil Procedure.*" *Trabal Hernandez v. Sealand Services, Inc.,* 230 F. Supp.2d 258, 259 (D.P.R. 2002).

While Rule 59(e) provides a party with ten days in which to move to alter or amend a judgment, it "does not apply to motions for reconsideration of interlocutory orders from which no immediate appeal may be taken . . . including summary judgment denials." *Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 4 (1st Cir. 2005). "Interlocutory orders such as these 'remain open to trial court reconsideration' until the entry of judgment.'" *Id.,* quoting *Geffon v. Micrion Corp.,* 249 F.3d 29, 38 (1st Cir. 2001).

II.     The Court Should Reconsider its Decision to Deny Plaintiff's Motion for Summary Judgment Based Upon the Discovery of New Evidence.

On November 21, 2005, this Court denied Plaintiff's Motion for Summary Judgment on the basis that there are "material facts in dispute, primarily whether Defendant agreed to be bound by project documents of the Central Artery Project." The Court noted during the course of the Motion hearing that there was insufficient evidence to show that Durod was "accepted" as a participant in the Pension Plan before March 26, 2002, when Durod signed an Assent to the Project Labor Agreement.

During the course of preparing for the Final Pretrial Conference, Plaintiff Fund discovered new evidence in its files concerning the acceptance of Durod as a participating employer in the Pension Plan. This new evidence consists of a document titled "New Employers Approved at the March 1998 [Trustees] Meeting". (Supplemental Affidavit of Charles Langone, ¶ 2; Exhibit A). Durod was one of the approved employers. The document lists a "participation date" for Durod of

July 1, 1997, and shows that as of March 1998, Durod had made contributions to the Fund from July 1997 through January 1998.  The Fund's newly discovered evidence also includes a March 23, 1998 letter from Fund Manager Charles Langone to Durod in which he wrote, in relevant part: ***"In accordance with the Rules adopted by the Board of Trustees, we are pleased to advise that your Company has been accepted as a Contributing Employer in this Fund."***  (Supp. Aff. Langone, ¶ 2; Exhibit B).  In the letter, Mr. Langone also stated that Durod's participation date and start of its contribution period was July 1, 1997.

As more detailed below, this evidence directly addresses the issue of whether Durod manifested an intent to be bound by the Project Labor Agreement and whether the Fund ever accepted Durod as a participating employer in the Pension Plan.

Plaintiff filed its Motion for Summary Judgment on June 10, 2005.  On June 6, 2005, the Fund had just completed the moving of its entire offices from Boylston Street in Boston to One Wall Street in Burlington, Massachusetts.  As a result of the confusion caused by the move, the above-referenced documents regarding the Trustees of the Fund's acceptance of Durod as a participating employer in the Pension Plan were not available at the time Plaintiff filed its Motion for Summary Judgment.  It was only in the course of preparing for the Final Pretrial Conference (and preparing the Pretrial Memorandum and Trial Appendix) in June 2006, that the above documents were discovered.  As a result, Plaintiff now files this Motion for Reconsideration because it believes that this documentation, coupled with the evidence already presented in Plaintiff's Motion for Summary Judgment, will lead the Court to reconsider its decision and ultimately grant Plaintiff's Motion for Summary Judgment.

4

III. <u>The Recently Discovered Evidence Establishes that Durod Agreed to be Bound to the Project Labor Agreement and Was Accepted as a Participating Employer in the Pension Plan.</u>

The newly discovered evidence bridges any gaps in the Fund's argument that Durod was bound to make contributions to the Fund and to submit to a payroll audit for the time period of July 1997 through February 2002 (and beyond).

    A.    <u>The Terms of the PLA Bound Durod to the Fund's Trust Agreement.</u>

First, Durod was bound by the terms of the Project Labor Agreement by virtue of working on the Central Artery Tunnel Project. There is no dispute that Durod began working on the Central Artery Tunnel Project in or about July 1997. Article II, Section 2(b) of the Project Labor Agreement ("PLA") states that the PLA shall apply to all subcontractors of signatory contractors:

> It is agreed that all direct subcontractors of a Contractor, of whatever tier, ***who have been awarded contracts for work covered by this Agreement*** on or after the effective date of this Agreement ***shall be required to accept and be bound by the terms and conditions of this Agreement***. (Exh. 3).[1] (Emphasis added).

Thus, by performing work on the Central Artery Tunnel Project, Durod agreed to abide by the terms of the Project Labor Agreement.[2]

Furthermore, by accepting the terms of the PLA, Durod agreed to be bound by the terms of the Fund's Trust Agreement, since a participating contractor "***adopts and agrees to be bound by the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds***." (Exh. 1) (Emphasis

---

[1] Unless otherwise noted, all exhibits cited to herein are to those attached to Charles Langone's initial Affidavit, which was submitted with Plaintiff's initial Motion for Summary Judgment.

[2] In addition, the subsequent Memorandum of Agreement ("MOA") specifically requires that contractors or their designated approved subcontractors make contributions for truckers employed on the CA/T Project and to the New England Teamsters & Trucking Industry Pension Fund as required by the Teamsters Agreement" (Exh. 4), and the subsequent Memorandum of Understanding ("MOU") also makes specific reference to making contributions to the Fund. (Exh. 5).

5

added). Durod is therefore required to make contributions to the Pension Fund based upon the terms of the PLA.

      B.    <u>Durod's Course of Conduct Manifested an Intent to be Bound to the PLA and Trust Agreement.</u>

Durod's course of conduct manifested an intent to be bound by the terms of the Project Labor Agreement and the Fund's Trust Agreement. In or about July 1997, Durod began making contributions on the Central Artery/Tunnel Project. In November 1997, Durod opened an account with the Fund to make contributions for their employees working on the Project, and agreed to be bound by the terms of the Project Labor Agreement. Durod's assent to the PLA is evidenced by the November 13, 1997 letter from the Fund to Durod in which the Fund stated that it had opened an account and started billing:

> In accordance with information recently received, *we have opened the above account and started billing. According to our records contributions have been received through September 1997.* (Exh. 6).

The November 13, 1997 letter also requested that Durod complete a questionnaire prior to the Fund's accepting it as a contributing Employer, and Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379 s*ent a letter to the Fund dated November 19, 1997 asking that an account be opened for Durod.* (Exhibit 8). Durod then completed the aforementioned questionnaire dated November 20, 1997, and *checked the box marked "yes" indicating that its "current Collective Bargaining Agreement" was its first for the unit represented by Teamsters Local 379*. (Exhibit 9). Clearly, the collective bargaining agreement that Durod referred to in the questionnaire was the Project Labor Agreement, even if it never formally signed the PLA.

6

Following the submission and completion of this documentation in 1997, the Fund's Trustees then formally accepted Durod as a contributing employer in the Fund in March 1998, as more fully explained below and as evidenced by the newly discovered documents.

    C.    <u>The Newly Discovered Evidenced Confirms Durod's Intent to be Bound to the PLA and Trust Agreement and the Fund's Formal Acceptance of Durod as a Participating Employer in the Fund's Pension Plan.</u>

At the March 1998 Trustees meeting, the Trustees of the Fund approved Durod as a "Contributing Employer" in the Fund with a participation commencement date of July 1, 1997. Not only is this evidenced by the document from the March 1998 Trustees meeting which lists Durod, along with numerous other employers, as having been approved as a participating/contributing employer in the Fund and Pension Plan,[3] but also by the letter sent by Fund Manager Charles Langone to Durod dated March 23, 1998:

> ***In accordance with the Rules adopted by the Board of Trustees, we are pleased to advise that your Company has been accepted as a Contributing Employer in this Fund.*** This acceptance refers specifically to the classifications of employment covered by ***your Collective Bargaining Agreement for which contributions are to be made*** under the ***account number*** shown above.
>
> ***Your participation date and start of your contribution period is July 1, 1997. The accumulation of pension credit by your Covered Employees*** for their periods of employment both before and during the contribution period (past service credit and contributory credit) ***will be subject to the applicable rules of the Fund***. Only those Covered Employees who are on your payroll as of the participation date will be eligible for past service credit.
>
> If your Covered Employees have employment prior to the contribution period, the monthly accrual value for each year of past service credit is $29.40. Of course, this amount applies only to past service credit earned with your Company and does not affect nor change the value of any other credit earned by your employees at other places of employment.
>
> Enclosed please find the following:
>
>     1. Internal Revenue Service favorable determination letter of February 16, 1996.
>     ***2. Information regarding delinquency procedures***
>     ***3. Summary Plan Description***

---

[3]     Exhibit A, attached to the Supplemental Affidavit of Charles Langone.

7

>A copy of this *approval letter* is being sent to your covered employees with known addresses.
>
>We will be pleased to assist you in any way possible *in connection with your Company's participation in the Pension Fund.* (Emphasis added).

Based upon the language of this letter, it is undisputed that Durod was accepted as a contributing and participating employer in the Fund's Pension Plan, and that Durod was notified of this fact. It is also undisputed that Durod never responded to Mr. Langone's March 23, 1998 letter to object to its contents, or to dispute that Durod was a participating employer in the Fund's Pension Plan. Moreover, prior to receiving this document, Durod admitted that it had a collective bargaining agreement (PLA) pursuant to which it was required to make contributions when it completed the Fund's questionnaire.

If this evidence were not enough, Durod made contributions to the Fund starting in November 1997 (for work performed starting in July 1997) and continuing to date in a total amount of $502,321.69. This amount includes $374,079.36 in contributions between November 1997 and March 2002, the time in which Durod claims it had no obligation to make contributions. (Supp. Aff. Langone, ¶ 8; Exhibit C).

D.   <u>The Fact that Durod Did Not Sign the PLA or the Trust Agreement is Not Dispositive.</u>

As fully argued in Plaintiff's Memorandums of Law in support of its Motion for Summary Judgment, Section 302(c) (5) of the Labor Management Relations Act "does not require a signed agreement; it merely requires a 'written one'". *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 761, 770 (7th Cir. 2004). In addition, "any written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, the 'detailed basis' on which contributions are to be made." *Id.* at 771,

8

n.9, quoting *Guthart v. White,* 263 F.3d 1099, 1103 (9th Cir. 2001).   Here, the "written agreement" is the PLA.  The PLA, plus the Fund's Trust Agreement, referenced therein, provide a detailed basis upon which Durod is to make contributions.

In March 1998, the Trustees of the Fund, pursuant to the Fund's Trust Agreement, formally approved Durod as a contributing employer in the Fund and agreed to waive the requirement that Durod sign the Trust Agreement or the collective bargaining agreement. (Supp. Aff. Langone, ¶ 5). The Trustees decided to make an exception for contractors working on the Central Artery Tunnel project where, as here, all other requirements were met and procedures followed. (Supp. Aff. Langone, ¶ 5).  Local 379 sent a letter to the Fund requesting that an account be opened for Durod (Exhibit 8), and noted that Durod would be working on the Central Artery Tunnel Project.

In addition, like all prospective contributing employers, Durod completed a Fund questionnaire (pursuant to which it acknowledged that it was working under a collective bargaining agreement), and this paperwork, along with the November 19, 1997 letter from Local 379 to the Fund, and the two November 13, 1997 letters from the Fund to Durod, were submitted to the Trustees for their consideration at the March 1998 Trustees meeting. (Supp. Aff. Langone, ¶ 4).  As noted in the minutes of the meeting, the Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were made in the case of contractors working on the Big Dig based upon the nature of the project and the existence of the PLA. (Supp. Aff. Langone, ¶ 5).[4]

---

[4]   Article IV of the Trust Agreement provides that the Trustees "shall have the power to ***construe, with discretionary authority***, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees . . . " (Exhibit 1) (Emphasis added).

In addition, Article I, Section 1.09 of the Rules and Regulations of the Pension Plan define a contributing employer as:

> ***Any employer who*** has been accepted by the Trustees for participation in this Pension Fund as herein defined, provided the employer has signed a copy of the Trust Agreement and is required to make contributions to the

Moreover, in addition to this formal acceptance by the Trustees of the Fund, the evidence establishes that Durod engaged in a pattern of conduct for a number of years that clearly manifested an intent to be bound by the PLA and the Fund's Trust Agreement. It acknowledged in 1997 that it had a collective bargaining agreement pursuant to which contributions were to be made (Exhibit 9). It made contributions starting in 1997 and continuing to the present and it completed the Fund's remittance reports when making those contributions. (Supp. Aff. Langone, ¶ 8).

This pattern of conduct, coupled with the newly discovered evidence showing that Durod was formally accepted as a contributing employer in the Fund in March 1998 with a July 1, 1997 participation date, establishes that Durod agreed to be bound to the terms of the PLA and Trust Agreement effective July 1, 1997.

E.   Durod is Required to Submit to an Audit.

The PLA specifically provides in Article X, Section 2 that a participating contractor "agrees to pay contributions to the established employee benefit funds in the amounts designated," and also "adopts and agrees to be bound by the written terms of the legally-established Trust Agreements. . ." (Exh. 3). Paragraph (e) of the Standard Participation Agreement ("Appendix 'A'" of the Trust Agreement) provides that "*the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer* for all employees performing work within the scope of and/or covered by this collective bargaining agreement." (Exhibit 1).

The Fund's Complaint seeks to collect delinquent contributions and to conduct a payroll audit of Durod. The Fund has a fiduciary duty to "preserve and maintain trust assets . .. and this encompasses [determining] exactly what property forms the subject matter of the trust [and] who are the beneficiaries." *Central States, Southeast & Southwest Areas Pension Fund v. Central*

---

Fund by a Collective Bargaining Agreement *and/or as approved by the Trustees.* (Emphasis added) (Exhibit 2).

*Transport, Inc.,* 472 U.S. 559, 572 (1985).  One of ERISA's principal purposes is to "'make sure that if a worker has been promised a defined pension benefit upon retirement—and he has fulfilled whatever conditions are required to obtain a vested benefit – he will actually receive it.'" *Id.* at 569, quoting *Nachman Corp. v. Pension benefit Guaranty Corp.,* 446 U.S. 359, 361 (1980).

If an individual worked for Durod on the Central Artery Tunnel project during the period of 1997 to 2002 (the period for which Durod does not want to submit to an audit), that individual would be eligible to seek pension credits from the Fund.  The Fund is therefore obligated to audit Durod to determine whether that individual was properly credited for the hours of work he performed for Durod, and whether contributions were made on his behalf to the Fund.  The Fund therefore seeks to audit Durod because it has a fiduciary duty to ensure that contributions were properly made for individuals who worked on the project. (Supp. Aff. Langone, ¶ 12).

IV.    Conclusion

The newly discovered evidence establishes that the Trustees of the Fund formally accepted Durod as a contributing employer in the Fund and a participating employer in the Fund's Pension Plan, and that Durod was formally notified of its acceptance on March 23, 1998.  This evidence clearly negates any claim by Durod that it did not agree to accept the terms of the PLA or the Trust Agreement or that it did not manifest an intent to be bound by the terms of those agreements.  This evidence, coupled with the 1997 documents and Durod's course of conduct in making over $374,000 in contributions to the Fund between July 1997 and February 2002, unequivocally establishes that Durod agreed to be bound by the PLA and the Trust Agreement.

Thus, the Court should grant Plaintiff's Motion for Reconsideration, reconsider its earlier decision denying Plaintiff's Motion for Summary Judgment, and ultimately grant Plaintiff's Motion for Summary Judgment in its entirety.

Dated:  July 28, 2006                                Respectfully submitted,

                                                     For the Plaintiff,
                                                     CHARLES LANGONE, as
                                                     FUND MANAGER of the
                                                     NEW ENGLAND TEAMSTERS &
                                                     TRUCKING INDUSTRY PENSION FUND,
                                                     By his Attorneys,


                                                     /S/ Jonathan M. Conti
                                                     Catherine M. Campbell, BBO #549397
                                                     Jonathan M. Conti, BBO #657163
                                                     Feinberg, Campbell & Zack, P.C.
                                                     177 Milk Street, Boston, MA 02109
                                                     (617) 338-1976


**CERTIFICATE OF SERVICE**

I, Jonathan M. Conti, attorney for the Plaintiff, hereby certify that on this day I mailed a copy of the within document by first class mail, postage prepaid, to Robert W. Galvin, Esq., Galvin & Galvin, SP, 10 Enterprise Street, Suite 3, Duxbury, MA 02332-3315.


Dated: July 28, 2006                                 /S/ Jonathan M. Conti
                                                     Jonathan M. Conti