UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND,<br><br>     Plaintiff,<br><br>v.<br><br>DUROD, LIMITED<br><br>     Defendant. | C.A. No. 04cv10039 RCL |

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR TRUSTEE PROCESS ATTACHMENT

I.   Introduction.

Plaintiff Charles Langone, as Fund Manager of the New England Teamsters and Trucking Industry Pension Fund ("Plaintiff" or "Fund"), filed a Motion for Approval of Trustee Process pursuant to Federal Rule of Civil Procedure 64 in aid of the efforts of the Plaintiff to make certain that there are sufficient assets of Defendant Durod, Limited ("Defendant" or "Durod") available to the Plaintiff upon entry of judgment by this Court.

Defendant is delinquent in making contributions to the Fund for February 2004 through September 2004 and for November 2006, and owes past due interest, liquidated damages, and underpayments in a total estimated amount of $30,830.43. Moreover, in litigating this matter, the Fund has already incurred $30,864.79 in attorney's fees and costs.

Plaintiff seeks to trustee process $25,000.00 currently being held by third-party trustee Modern Continental Companies ("Modern") that is owed to Durod for related matters involving the Central Artery Tunnel project.

Defendant Durod now opposes Plaintiff's Motion on several grounds, all of which are insufficient to defeat Plaintiff's Motion for Approval of Trustee Process and most of which are based upon false assumptions.

First, the exhibits Defendant attached to its Opposition concerning its contributions to the Fund between February 2004 and September 2004 show that Durod did not make contributions or file remittance reports for those individuals it classified as its own (i.e. Durod's) employees.  Rather, Durod only filed remittance reports and made contributions for those extra workers it hired and deemed "hired trucks".  As no remittance reports were filed by Durod for its own employees for the aforementioned time period of February through September 2004, the Fund followed its standard procedure in estimating delinquent contributions by taking the average amount of monthly contributions made by Durod to the Fund for its own employees for the six-month period preceding the first delinquent month.

In addition, Durod's claim that it previously offered, during the course of this litigation, to pay late fees, is irrelevant, as its "offer" was always conditioned on the Fund agreeing that it was not entitled to audit Durod or seek contributions for work performed prior to March 26, 2002.  The issue of when Durod became a contributing employer in the Fund is the main legal issue that exists in this case.  The Fund is not obligated nor interested in waiving its right to pre-2002 contributions or an audit for that time period in exchange for Durod paying late fees that it admits are undisputedly owed to the Fund.

With respect to the Trustee Process itself, the fact that the Fund allegedly could have filed a bond claim through Modern's surety bond is irrelevant here.  Assuming, *arguendo*, that such a bond claim was available to satisfy part or all of Plaintiff's claims, the Fund's calculations as to Durod's delinquencies are admittedly based in part on estimates.  This is

solely because ***Durod refused to allow the Fund to conduct an audit*** until recently, and said audit still has not been completed because Durod has insisted that it first be allowed to subpoena records from third-party Modern before the Fund completes its audit of Durod. Defendant's argument ignores the fact that there would likely be timeliness issues in filing such a bond claim because of this inability to audit.  Most importantly, Defendant presents no evidence, aside from its counsel's bald assertions, that Modern possesses liability insurance sufficient to satisfy the Fund's claim that would have been available to the Fund.

Furthermore, contrary to Durod's claim, the Fund was not required to first seek to trustee process Durod's equipment before seeking to trustee process the $25,000.00 settlement being held by Modern simply because attachment of the former source would be less of an inconvenience to Durod than the latter.  If anything, Plaintiff's decision to attach the $25,000.00 being held by Modern allows Durod to continue to perform work without interruption.

Lastly, Durod's claim that Langone or the Fund contacted Modern Continental and advised that Durod had not made payments to the Fund is patently false. As discussed fully, *infra*, Modern contacted Fund counsel Catherine Campbell, Esq. and disclosed that Modern was holding $25,000.00 settlement check for  Durod.

For all of the foregoing reasons, and as set forth in greater detail herein, the Court should deny Defendant's Opposition and grant Plaintiff's Motion for Trustee Process.

II.    Argument

    A.    <u>Defendant Has Not Filed Remittance Reports for its Own Employees for the Months of February through September 2004.</u>

Contrary to Defendant's claims, it has not produced sufficient evidence that it filed remittance reports, and/or made contributions, for *its own employees* for the months of February through September 2004.

The Fund established two sets of accounts for Durod to make contributions on the Central Artery Project. (Affidavit of Charles E. Langone, ¶ 4). The first account is code number 379-488, which is for contributions made by Durod for those individuals Durod deems to be "Durod employees". (Langone Aff., ¶ 4). A second account was later set up for contributions for those individuals ***Durod referred to*** as "hired trucks", who were individuals Durod hired specifically for the Central Artery project but which it did not consider Durod "employees". The Fund's account number for "hired trucks" is 379-434. (Langone Aff., ¶ 5).

Although Durod previously filed separate reports for both its own employees (code 379-488) and for "hired trucks" (code 379-434), beginning in February 2004 and continuing through September 2004, Durod stopped submitting remittance reports under code 379-488. (Langone Aff., ¶ 6; Exhibit 1). All of the remittance reports submitted during this time frame either stated code "379-434"; code "379-434" with the added notation "Hired Trucks"; or no code at all (just the individuals' names and hours). (Langone Aff., ¶ 6; Exhibit 1). Durod filed no remittance reports and made no contributions for those individuals coded 379-488, i.e., Durod's own "employees". (Langone Aff., ¶ 6; Exhibit 1).

Moreover, with respect to the remittance reports that Durod submitted without a code or notation, it should be noted that all of the individuals listed on said reports were also

4

included, at one point or another, on one or more of the remittance reports that Durod labeled with account number 379-434 and/or the notation "hired trucks".[1] (Langone Aff., ¶ 6; Exhibit 1). As a result, the Fund's records therefore show that no remittance reports were ever filed for Durod employees during that time frame but, rather, were only filed for those individuals Durod classified as "hired trucks". Thus, because Durod never submitted remittance reports indicating that its own employees (code 379-488) worked on the Central Artery project between February 2004 and September 2004, the Fund must assume that contributions are delinquent for Durod's employees for the time period requested. (Langone Aff., ¶ 8).

Durod also claims that it did not have anyone working on the Central Artery project from late July through September 2004 whatsoever, but Durod never filed remittance reports for those months indicating that its employees worked zero hours. (Langone Aff., ¶ 9). Without such remittance reports, the Fund does not know whether anyone worked during those months. Counsel for the Fund notified Durod's attorney on several occasions throughout the course of this litigation that if Durod maintained that no employees worked on the Central Artery Tunnel project from late July 2004 through September 2004, then it was required to submit remittance reports stating as such to the Fund. To date, however, no such remittance reports have been filed.

Thus, as Durod failed to file any remittance reports for its own employees between February 2004 and September 2004, the Fund is compelled to assume that Durod is delinquent for those months with respect to its own employees. As a result, the Fund, based

---

[1] For example, with respect to David Downing and Garrett Waite, Durod listed them on remittance reports with no code or notation written in whatsoever (such as in February 2004), but also included them on remittance reports with the code 379-434 (for hired trucks) submitted in May 2004 and June 2004. (Langone Aff., ¶ 6; Exhibit 1).

5

upon its standard procedure, estimated the monthly delinquency based upon the average of the six previous months of contributions. (Langone Aff., ¶ 9). As no remittance reports were filed, and as the average monthly amount of contributions for the six months preceding the February 2004 delinquency was $2,658.33, the Fund estimated a delinquency of $2,658.33 per month for a period of eight months between February 2004 and September 2004, for a total of $21,268.21. (Langone Aff., ¶ 10).

As noted previously, the reason why these estimated delinquencies for February 2004 through September 2004 have not been converted to concrete figures is that up until recently, Durod refused to allow the Fund to conduct an audit. While Durod has now agreed to submit to an audit with respect to records dating back to January 1, 1999, that audit has not been completed yet because Defendant requested that it be permitted to first subpoena records from Modern Continental. Defendant is currently in the process of securing those records from Modern to present to the Fund's auditor, thereby further delaying completion of the audit.

Lastly, it should be noted that these are not the only contributions due. Durod has not made contributions for the moth of November 2006, either.

    B.    <u>Durod Admits that it Owes Late Fees for Delinquent Contributions.</u>

In addition to the estimated delinquency of $21,268.21 for the months of February 2004 through September 2004, as well as the delinquency for November 2006, Defendant admits that it owes late payments for contributions it did not timely make, and that those late fees are due and owing. (Defendant's Opposition, ¶ 7). To now claim that it has offered to pay those late fees is disingenuous at best. Defendant has merely "offered" to pay those amounts as part of an agreement in which the Fund concedes that it does not have the right

to audit Durod for the time period prior to March 26, 2002. (Defendant's Opposition, ¶ 10). Plaintiff is under no obligation to waive its right to audit prior to March 2002 simply to collect late fees Durod admits are currently due and owing.

  C.  <u>Plaintiff Did Not Contact Modern Continental.</u>

  In its Opposition, Durod incredibly claims that Mr. Langone or someone from the Fund contacted Modern and informed Modern that Durod had not made payments to the Pension Fund. (Affidavit of James Roderick, attached to Def.'s Opp., ¶ 8). This is completely false.

  On December 29, 2006, Durod subpoenaed records from Modern that it believes will support Durod's claim that it made all required contribution payments due and owing. (Affidavit of Catherine M. Campbell, Esq., ¶ 2; Exhibit A). When Modern received the subpoena, one of Modern's attorneys telephoned Fund counsel Catherine Campbell on or about January 5, 2007, and asked about the nature of the case. (Campbell Aff., ¶ 3). Attorney Campbell explained that the Fund had filed a lawsuit to collect delinquent contributions for work performed by Durod on the Central Artery Tunnel project, as well as to compel Durod to submit to an audit by the Fund. (Campbell Aff., ¶ 3). During this conversation Attorney Campbell learned that Modern was holding $25,000.00 for a non-wage related settlement with Durod, and that Modern was to make such payment shortly. (Campbell Aff., ¶ 4). Only after learning of this $25,000.00 settlement from Modern's attorney did the Fund then file its Motion for Approval of Trustee Process. (Campbell Aff., ¶ 5).

While the manner in which it the Fund learned of the $25,000.00 settlement is utterly irrelevant, it is important to note that Durod's assertions as to the Fund's actions in this regard are reckless and patently false.

>  D.  <u>Plaintiff Was Not Required to File a Bond Claim Through Modern's Bond Company Nor Was It Required to First Seek Trustee Process of Durod's Equipment Before Seeking to Attach the $25,000.00 Settlement Amount Held by Modern.</u>

Defendant first claims that Plaintiff should have filed a claim on Modern's surety bond for Durod's delinquencies. This claim must be rejected for several reasons. First, Durod is ultimately responsible for its own delinquencies in making contributions, not third party Modern Continental. Defendant knows of no liability insurance maintained by Durod.

Moreover, as noted above, because Durod has consistently sought to prevent the Fund from auditing its records, and because Durod failed to properly file its remittance reports, the Fund's claim for delinquent contributions are, admittedly partly based upon estimated amounts. Without an opportunity, due to Durod's intransigence, to conduct an audit, the Fund has not been able to form a definitive amount owed by Durod for which it could make a claim on Modern's bond.

Furthermore, it is unclear that the Fund would have even been able to comply with any likely timeliness provisions for filing a claim on Modern's bond due to Durod's refusal to cooperate in submitting to an audit for several years.

Most importantly, the burden to show the existence of liability insurance is on the defendant. Mass.R. Civ. P. R. 4.1(c). A mere statement by counsel as to the availability of Modern's liability insurance is insufficient to meet Defendant's burden of showing that Modern's liability insurance was available to cover all or part of Plaintiff's claims.

Lastly, the fact that Durod may have equipment that the Fund also could have sought to attach is irrelevant. The Fund was not required to seek to attach such equipment. Durod has no basis for demanding that the Court determine which funds or goods should be trustee processed based upon which attachment will least inconvenience Durod.

The Fund therefore was not required to first make a claim on Modern's surety bond nor seek to trustee process Durod's equipment prior to seeking to trustee process the $25,000.00 being held by Modern and owed to Durod.

III.  Conclusion

For all of the foregoing reasons, the Court should grant Plaintiff's Motion for Trustee Process of the $25,000.00 currently being held by Modern and owed to Durod.


Dated:  February 9, 2007                    Respectfully submitted,

                                            For the Plaintiff,
                                            CHARLES LANGONE, as
                                            FUND MANAGER of the
                                            NEW ENGLAND TEAMSTERS &
                                            TRUCKING INDUSTRY PENSION FUND,

                                            By his Attorneys,


                                            /s/ Jonathan M. Conti
                                            Catherine M. Campbell, BBO #549397
                                            Jonathan M. Conti, BBO #657163
                                            Feinberg, Campbell & Zack, P.C.
                                            177 Milk Street, Boston, MA 02109
                                            (617) 338-1976

9

CERTIFICATE OF SERVICE

    I, Jonathan M. Conti, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) this 9th day of February 2007.

                                        /s/ Jonathan M. Conti__
                                        Jonathan M. Conti