UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
***************************************
CHARLES LANGONE, as FUND          *
MANAGER of the NEW ENGLAND        *
TEAMSTERS and TRUCKING            *
INDUSTRY PENSION FUND,            *
      Plaintiff,                  *      C.A. NO. 04CV10039 RCL
                                  *
V.                                *
                                  *
DUROD, LIMITED                    *
      Defendant.                  *
***************************************
```

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF
COURT'S DENIAL OF SUMMARY JUDGMENT

NOW COMES the defendant, Durod, Ltd. (hereinafter "Durod") and hereby submits the following Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration of the Court's prior denial of Plaintiff's Motion for Summary Judgment:

INTRODUCTION & PROCEDURAL BACKGROUND

As is evident from the pleadings, the present dispute involves pension fund litigation brought by the plaintiff, Charles Langone ("Langone"), the fund manager of the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund") against the defendant, Durod, Ltd., is a Massachusetts corporation that performs trucking and recycling work. The defendant, Durod, Ltd., was a subcontractor of Modern Continental, and performed trucking work on the Central Artery Tunnel (CA/T) Project.

1

Langone brings this action to compel, Durod, Ltd., a non-signatory to the Project Labor Agreement and non-union employer (without any Collective Bargaining Agreement) to submit to an audit[1] dating back to the first dates Durod, Ltd. made payments to the Pension Fund.   Durod objects to this type of audit and to the rules which might be applied in audit for the time period preceding March 26, 2002.

Durod, Ltd., has never disputed that it was required to submit to an audit and the rules and regulations relating thereto from and after March 26, 2002 when it expressly agreed to be bound by the terms and conditions of the Project Labor Agreement.   In fact, Durod, Ltd. has previously admitted being late according to the rules for some contributions (as a result of delayed payment by Modern Continental, its employer) and offered to pay expenses relating thereto.   The dispute remaining for this Court then centers on what the relationship was between the plaintiff, Langone, and the defendant, Durod, Ltd., prior in time to March 26, 2002.   The answer to this question will dictate whether the defendant, Durod, Ltd., is bound to submit to an audit before that date, and what rules, including rules relating to late fees, expenses, audit rights, whether pension contributions must be made for non-union employees, and other related rules may be enforced against Durod, Ltd., for that time frame.

Up until March 26, 2002, when the defendant, Durod, Ltd., admittedly signed an express agreement to be bound by the terms of a Project Labor Agreement relating to the Central Artery Tunnel (CA/T) project, the defendant, Durod, Ltd., maintains that all it was ever asked to do or understood it was doing was make contributions at certain specified rates for all hours worked by union employees working for Durod, Ltd. on the

---

[1] An audit was commenced by Langone's representatives in further of settlement in January through March 2007; however, it Durod maintains its objection thereto for the information prior to March 2002.

CA/T project, no more no less.     The plaintiff, Langone, claims in his original motion and in this motion for reconsideration that the defendant, Durod, Ltd., had manifested an intent by payment to be bound by the entire Project Labor Agreement during the time frame it began making payments in July 1997 through March 26, 2002 and therefore was bound by the Trust Agreement and its rules and regulations concerning audits, expenses and fees.     Durod, Ltd., continues to denies this is factually or legally true.

In its prior ruling on Summary Judgment, the Court refused to enter summary judgment for the plaintiff, Langone, because there were "material facts in dispute, primarily whether the Defendant agreed to be bound by the project documents of the Central Artery Project that required contributions by the Defendant to the Plaintiff Fund prior to March 26, 2002."     See Order entered 11/21/05 by Judge Lindsay.     There is nothing in the "newly discovered" documents which compel any different result on summary judgment.     There remain genuine issues of material fact as to what the parties' intent was which preclude summary judgment relating to this time frame.

SUMMARY OF THE MATERIAL FACTUAL BACKGROUND

The plaintiff, New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund") is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Langone Affidavit ¶ 2)[2].     The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an

---

[2] This is the original Langone Affidavit filed in Support of Summary Judgment.

Agreement and Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which has been amended from time to time. (Langone Affidavit ¶3; Exhibit 1).   Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund.   Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements. (Langone Affidavit ¶ 5; Exhibit 2).

Contributing employers to the fund are defined by Article I, Section 1.09 of the Rules and Regulations for the New England Teamsters & Trucking Industry Pension Plan "any employer who has been accepted by the Trustees for participation in this Pension Fund . . . <u>provided the employer has signed a copy of the Trust Agreement</u> and <u>is required to make contributions to the Fund by a Collective Bargaining Agreement and/or as approved by the Trustees</u>."   See Langone Affidavit ¶ 6; Exhibit 2, §1.09(a)(emphasis supplied).

The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides, in relevant part:

> (a)   This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
>
> (b)   Commencing with the _____ day of _____, _____, and for the duration of the current collective bargaining agreement, between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment

4

>subject to this collective bargaining agreement . . . (Langone Aff. ¶10; Exhibit 1).

Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the fund on remittance reports required by the Trustees. (Langone Aff. ¶ 11; Exhibit 1).   Paragraph (e) of Appendix A of the proposed Standard Participation Agreement in the Trust Agreement entitles the Trustees to audit a contributing employer's <u>payroll</u> and <u>wage records</u> as follows:

>All contributions shall be made at such time and in such manner as the Trustees shall reasonable require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions.

(Langone Aff. ¶ 12; Exhibit 1).

Paragraph (e) of Appendix A of the proposed Standard Participation Agreement in the Trust Agreement provides that if an employer

>Fail[s] to make contributions by the 20th day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Agreement . . . the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish at their discretion.

(Langone Aff. ¶ 13; Exhibit 1).

In or about 1997, the Central Artery (I-93)/tunnel (I-90) Project Labor Agreement ("PLA") was entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works; the Building & Construction Trades Council

5

of the Metropolitan District and its affiliated Local Unions; and the Building and Construction Trades Department, AFL-CIO and its Affiliated International Unions and their Affiliated Local Unions. (Langone Aff. ¶ 15; Exhibit 3).

On or about May of 1997, Modern Continental, a prime contractor and contributing employer to the Fund, engaged Durod, Ltd., to perform certain trucking work on the Project as a subcontractor. Roderick Affidavit at ¶3. Durod was not a union trucking company and had no so-called "Collective Bargaining Agreement" with the Teamsters Union. Supplemental Affidavit of James R. Roderick, Jr. ("Roderick Supplemental Affidavit") at ¶2. At the commencement of its work, Durod did employ some union drivers but since there was no mechanism in place to make health & welfare and pension contributions (which it always agreed to do) to union employees which it employed, Durod, Ltd., in order to comply with prevailing wage law made payments directly to the union employees from May through September 1997. Roderick Affidavit at ¶4. In October of 1997, Durod was forced by the union's business agent under the threat of loosing its work to <u>pay a second time</u> to the union's health and welfare and pension funds for the same period of time it had already paid the union drivers directly. Roderick Affidavit at ¶5. Thereafter, in accordance with its understanding to work on the job, Durod submitted weekly certified payroll to Modern Continental and pension remittance reports for any month in which Durod, Ltd. performed work on the Project. Roderick Affidavit at ¶9. In addition, Durod, Ltd. submitted monthly pension "remittance" reports to the union between December of 1997 and January 2004. Plaintiff's Statement of Facts at ¶30.

6

Under no circumstances had Durod agreed to sign any documents binding it to the Project Labor Agreement until March 26, 2002, when James Roderick, Jr., a principal in the company, signed a Certification, assenting to be bound by the Project Labor Agreement.  Paragraph 9 of this Certification states as follows:

> I herby agree to comply with and be bound to the Project Labor Agreement, Division 1, Special Provisions covering work to be performed on the Central Artery/Tunnel Project.  The terms and conditions of the Project Labor Agreement have been entered into by the signatory unions and Bechtel/Parsons Brinckerhoff and shall apply with respect to the work covered by all contracts on said Project.

(Langone Aff. ¶ 22; Exhibit 10; Roderick Affidavit at ¶10).

Roderick signed this certification as a requirement of continued employment and believing and understanding that it did not make Durod,  a union company, but believing that it simply required union contributions in the manner set forth in the Project Labor Agreement.     Roderick at ¶10.    Roderick was never provided with the Trust Agreement.    Id.

Prior to March 26, 2002, the defendant, Durod, Ltd., had specifically indicated to the union's business manager that all it ever agreed to do was to make payments to the fund at a certain rate by a certain date for the union employees.    Roderick Supplemental Affdavit at ¶2.     In fact, Durod, Ltd. specifically told everyone, including the business manager, that it was not agreeing to become a union shop and would not sign any documents which could be construed as making it such, including any pension documents.  Roderick Supplemental Affidavit at ¶2.    This fact was made clear to the Pension Fund itself by Paul V. Walsh, the Teamster Union Local 379's principal executive officer in his

7

November 19, 1997 Letter to the Pension Fund (which said Letter is stamped with a received date stamp dated November 21, 1997).   See Exhibit 8 to Langone Affidavit. Contrary to what is stated in the motion for summary judgment and referenced again in its motion for reconsideration, Durod, Ltd. did not complete a Pension Fund Questionnaire agreeing that it had a "Collective Bargaining Agreement" with the Teamsters' Union. Supplemental Roderick Affidavit at ¶4.   Someone completed a form but it was not Mr. Roderick or anyone who Mr. Roderick recognizes the handwriting for at Durod.   Roderick Id. at ¶4   In fact, there has never been a Collective Bargaining Agreement at any time with the Teamsters' Union.   Id.

Apparently, in March of 1998, the Pension Fund, wrote Durod and accepted it as a "Contributing Employer" to the Fund.   See March 23, 1998 attachment to Langone Supplemental Affidavit.   Said letter mistakenly references "classifications of employment covered by your Collective Bargaining Agreement" if there was such an agreement.   In reviewing said letter now, Durod states that nothing other than the mistaken reference to a Collective Bargaining Agreement indicated to it that it was required to do anything other than make payments to the Pension Fund at a certain rate for each hour worked on the CA/T project, as originally instructed and had been done to date. Supplemental Roderick Affidavit at ¶5.

As originally indicated occasionally, over the years, the Pension Fund threatened Durod about delinquencies which turned out to be erroneous through early 1999 and were explained by Durod, Ltd. in correspondence to the Fund.   See Exhibits 1 and 2 to Roderick Affidavit.   Some of the perceived delinquencies were explained by reference to the fact that Durod's employees worked for other contractors who in turn made pension

8

contributions for these employees. Id. Also, occasionally, over the years, Durod admittedly did not timely make contributions to the Fund as a result of Modern Continental's failure to pay Durod in accordance with law as a SOMWBA Certfied Disadvantaged Business Enterprise. For years, however, there was no audit requested or other dispute between Durod and the Pension Fund.

Durod ultimately received a demand to audit its payroll and wage records from the union's pension fund. Plaintiff's Statement of Facts ¶¶42,44. Thereafter, because of Durod's objection thereto, a meeting was held at the CA/T Project administration building on Kneeland Street in Boston at which Durod, Modern Continental, the union's business agent, and the CA/T trucking coordinator were present and agreed that as an alternative to an audit Modern Continental, as the contributing employer, would provide its certified payroll records which it could match with Durod's pension reports, to corroborate that the proper pension payments were being made.

ARGUMENT

A. The Summary Judgment Standard.

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Langone v. Russo Bros., Inc., 964 F.Supp. 24, 27-28

(1996) (quoting Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir.1995), cert. denied, 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (quoting Rule 56, Fed.R.Civ.P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id at 28 (quoting National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)). Likewise, " 'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Id. (quoting Smith v. F.W. Morse & Company, Inc., 76 F.3d 413, 428 (1st Cir.1996)).    Typically, all inferences in favor of the nonmoving party are resolved in favor of the nonmoving party.    Since there is either an issue of material fact concerning the rights and duties of the parties concerning their obligations to one another particularly over the time and scope of audit rights and responsibilities for late fees and counsel fees and/or the plaintiff cannot establish it is entitled to judgment as a matter of law, the plaintiff's summary judgment motion should be denied even on reconsideration.    In the alternative, if the defendant's facts are undisputed, then the defendant requests that an audit be ordered and ordered limited as requested by the defendant, Durod, along with an order denying late fees and counsel fees.

B.     Durod was not bound by the Project Labor Agreement until, at best, it signed an Assent  on or about March 26, 2002.

In its Motion for Reconsideration, Langone makes the same essentially the same argument he did the first time.    The plaintiff, Langone, claims now that since they voted to accept Durod, Ltd. as a contributing employer, Durod made payments, and signed a Questionnaire (which it did not do), it evidenced a manifest intent to be bound by the Project Labor Agreement.    Incredibly, the plaintiff, Langone, also now uses the terms Collective Bargaining Agreement and Project Labor Agreement interchangeably.    We also now know from the Supplemental Affidavit of Langone that the Pension Fund's Trustees waived the requirement that Durod sign a Collective Bargaining Agreement and the Trust Agreement allegedly given the nature of the work on the CA/T Project.

Not only are the facts surrounding the "signature" on the Questionnaire denied, but these facts coupled with the later written agreement to be bound by the Project Labor Agreement in fact show a clearly contrary intent on the part of Durod, Ltd., an intent merely to make contributions and not bind itself to rules and regulations that a union company would obviously agree to be bound by.    In fact, it remains inconceivable that the plaintiff, Langone, would argue that there is no genuine issue of material fact that Durod, Ltd. intended to be bound until at least Durod executing an Certification containing its assent to be bound by the Project Labor Agreement.    See <u>Gariup v. Birchler Ceiling & Interior Co</u>., 777 F.2d 370, 376 (7th Cir. 1985)(employer became party to collective bargaining agreement when it signed Assent of Participation form).    In fact, the union seemed to understand this when it acknowledged on November 19, 1997 that "they [Durod] . . . will not be signing any pension documents."    See Plaintiff's Statement of Facts ¶27 and Exhibit 8 to Langone Affidavit.    Why would one make a protest following the March 28, 1998 letter if they did not have a Collective Bargaining Agreement, had not

11

signed any of the so-called pension documents (and would not be signing any such documents), and were doing that which they did agree to – pay the pension fund on a monthly basis for each hour worked by union employees on the CA/T project.

C.     Since Durod evidenced an Assent on or about March 26, 2002, extrinsic evidence is not available to evidence a contrary intent prior thereto.

The plaintiff, Langone, next citing contractual ambiguity language, claims that extrinsic evidence should be used to evidence intent to be bound.   The defendant, Durod, maintains that there was never any misunderstanding or ambiguity in the union documentation about Durod's status.   Quite clearly, at least until, March 26, 2002, Durod clearly was not a signatory to any document manifesting an intention to be bound to the Project Labor Agreement.   Accordingly, all of the rights, duties, obligations fees and requirements of the Trust Agreement through March 26, 2002 are inapplicable at least to Durod.   Moreover, Modern Continental, the corporation which was unmistakably bound as a contributing employer, was always ultimately responsible for making timely and accurate contributions to the union funds.   In fact, its conduct, adversely effected the ability of Durod's efforts to facilitate payments for its union employees over the years as set forth in Mr. Roderick's affidavit.

D.     The Fund is not entitled to payment of interest and underpayments or any other fees.

Citing only the Trust Agreement, a document which Durod never signed, the plaintiff, Langone claims a right to assess fees, interest, damages and attorneys' fees. Through March 26, 2002, there is absolutely no basis in law or fact for such a claim. In addition, had the Fund obtained records from Durod's prime contractor, Modern Continental, as Durod believed, there would have been no necessity for a suit of any type. In fact, Durod, has always been willing to submit to an audit relating to work on the Project although it never believed it was obligated to turn over documents other than payroll and wage records for any work unrelated of the Project. In addition, Durod has always been willing to pay the late fees regardless of whether they were owed to avoid the cost of litigating this matter. The only issue remaining involves the Funds counsel fees which were advisedly several thousand dollars. Durod is adamantly opposed to such fees given the ability of the Fund to satisfy itself from Modern Continental which it elected not to do and given that considerable effort was made in this litigation to re-review five years of payroll and wage records pre-dating the assent signed by Durod.

E.   <u>There is no "written" agreement to be bound by the Project Labor Agreement or Trust Agreement until after March 26, 2002.</u>

Langone also claims that case law relating to Project Labor Agreements, does not require a signed agreement, only "a written agreement." See Pages 8 and 9 of the Plaintiff's Memorandum of Law in Support of its Motion for Reconsideration. It claims that Durod's "complet[ion]" of Fund questionnaire along with the letter from the Teamsters Union (not Durod) requesting an account be opened, and the letters from the Pension Fund

13

to Durod (not Durod to the Pension Fund), and Durod's payments to the Pension Fund evidence a written agreement to be bound by the Project Labor Agreement. Once again, if the intent to be must come from Durod and be based on a written agreement, there is absolutely no way an intent to be bound can be inferred from these written documents. Without a written agreement, the Pension Fund cannot impose rules, duties and obligations on Durod which Durod never agreed to.

## CONCLUSION

Since the plaintiff, Langone, cannot demonstrate on the record, the absence of a triable issue of material fact and/or that it is entitled to judgment as a matter of law as proposed, its motion for summary judgment should be denied. In the event that the Court were to determine that there are no material facts concerning the status of Durod after March 26, 2002, Durod submits that this Court could enter an order requiring a circumscribed audit at the cost and expense of the Fund from that date forward and not involving any unrelated work. Durod would remain opposed to any fees since any fees have been greatly exceeded by its own cost to oppose an examination of records and defend against the imposition of unjustified fees.

                          Respectfully Submitted
                          DUROD, LTD.
                          By its Counsel

DATED:    7/30/2007

                          /s/  Robert W. Galvin
                          _____
                          Robert W. Galvin, Esq.
                          10 Enterprise Street, Suite 3
                          Duxbury, MA  02332-3315
                          (781) 934-5678
                          BBO # 184000 REG
                          BBO # 561397  RWG

## CERTIFICATE OF COMPLIANCE

     I. Robert W. Galvin, hereby certify that in accordance with Local Rule 7.1. I have conferred with counsel of record in this matter.

                          /s/ Robert W. Galvin
                          _____
                          Robert W. Galvin

## CERTIFICATE OF SERVICE

     I, Robert W. Galvin, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Electronic Filing (NEF) on 7/30/07.

                          /s/ Robert W. Galvin
                          _____
                          Robert W. Galvin