UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER<br>of the NEW ENGLAND TEAMSTERS AND<br>TRUCKING INDUSTRY PENSION FUND,<br><br>       Plaintiff,<br><br>v.<br><br>DUROD, LIMITED<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No.  04cv10039 RCL<br>)<br>)<br>)<br>)<br>)<br>) |

PRETRIAL MEMORANDUM

Pursuant to the Court's Order, Plaintiff Charles Langone, as Fund Manager for the New England Teamsters and Trucking Industry Pension Fund, and Durod, Limited hereby submit their Joint Pretrial Memorandum

a.    **Trial counsel for the Plaintiff:**

| | |
|---|---|
| Jonathan M. Conti | Catherine M. Campbell |
| Feinberg, Campbell & Zack, P.C. | Feinberg, Campbell & Zack, P.C. |
| 177 Milk Street | 177 Milk Street |
| Boston, MA 02109 | Boston, MA 02109 |
| (617) 338-1976 | (617) 338-1976 |

**Trial counsel for the Defendant:**

Robert W. Galvin
Galvin & Galvin
10 Enterprise Street, Suite 3
Duxbury, MA 02332
(781) 934-5678

b.     **Plaintiff's summary of its position:**

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*, brought on behalf of the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund" or "Fund") to compel a payroll audit of Defendant Durod, Limited, and to collect past due contributions and interest owed to the Fund.  Specifically, the Fund seeks to collect delinquent contributions for work performed by Durod on the Central Artery (I-93) Tunnel (I-90) Project.

Plaintiff maintains that Defendant was obligated to make contributions starting in 1997. That year, the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") was entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works and various unions. The PLA provides that a participating contractor agrees to pay contributions to the established employee benefit funds and adopts and agrees to be bound by "the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds."  Article II, Section 2(b) of the Project Labor Agreement ("PLA") states that the PLA shall apply to all subcontractors of signatory contractors:

> It is agreed that all direct subcontractors of a Contractor, of whatever tier, *who have been awarded contracts for work covered by this Agreement* on or after the effective date of this Agreement *shall be required to accept and be bound by the terms and conditions of this Agreement.* (Emphasis added).

Thus, by performing work on the Central Artery Tunnel Project, Durod agreed to abide by the terms of the Project Labor Agreement

In addition, the parties negotiated the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA") on August 1, 1997 that provides that contractors or their designated approved subcontractor, will employ the truckers on the CA/T Project and shall ensure

payments on their behalf to the Fund. The parties also entered into a "Memorandum of Understanding as to Teamster Benefits" ("MOU") on September 24, 1997, which provides that all employee-drivers who the contractor directly employs, as well as certain owner-operators who perform work on the CA/T Project, are covered by the CA/T Project Labor Agreement (PLA) and must make contributions to the Fund.

The Fund's Trust Agreement contains a Standard Participation Agreement which provides that a participating employer agrees to make payments to the Fund "for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement," and also entitles the Trustees to audit a contributing employer's payroll and wage records. While Defendant claims that it did not sign the Trust Agreement or the PLA, Section 302(c) (5) of the Labor Management Relations Act "does not require a signed agreement; it merely requires a 'written one'". *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d at 761, 770 (7th Cir. 2004). In addition, "any written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, the 'detailed basis' on which contributions are to be made." *Id.* at 771, n.9, quoting *Guthart v. White,* 263 F.3d 1099, 1103 (9th Cir. 2001). Here, the "written agreement" is the PLA. The PLA, plus the Fund's Trust Agreement, referenced therein, provide a detailed basis upon which Durod is to make contributions.

In November 1997, Durod began making contributions to the Fund. On or about November 13, 1997, the Fund opened an account for Durod and sent Durod remittance reports on which it was to report monthly pension contributions for its employees while working on the Central Artery Tunnel project. The Fund also on November 13, 1997 sent Durod and Teamsters Local 379 a letter that stated the Fund had opened an account for Durod and had started billing, and enclosed a

document titled "New England Teamsters & Trucking Industry Pension Fund Questionnaire" requesting information pertinent to Durod's participation in the Fund.

On November 20, 1997, Durod, like all prospective contributing employers, completed the Questionnaire supplied by the Fund. In response to the question, "Is your current Collective Bargaining Agreement with the above Employer your first Agreement covering this bargaining unit?", James Roderick, Jr., President of Durod, checked "Yes".

In addition, the Questionnaire, along with the November 19, 1997 letter from Local 379 to the Fund, and the two November 13, 1997 letters from the Fund to Durod, were submitted to the Trustees for their consideration at the March 1998 Trustees meeting. The Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were made in the case of contractors working on the Big Dig based upon the nature of the project and the existence of the PLA..[1]

In March 1998, at the Funds' Trustees' Meeting, the Trustees of the Fund approved Durod as a Contributing Employer to the Fund with a July 1, 1997 participation date. In a letter dated March 28, 1998, Charles Langone, Fund Manager, sent Durod a letter notifying Durod that it had been accepted as a Contributing Employer in the Fund. Durod did not dispute its acceptance. Instead, following Durod's acceptance of the PLA in November 1997, it began making monthly contributions to the Fund for its employees and submitting monthly remittance reports in

---

[1]     Article IV of the Trust Agreement provides that the Trustees "shall have the power to *construe, with discretionary authority*, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees . . ."

In addition, Article I, Section 1.09 of the Rules and Regulations of the Pension Plan defines a contributing employer as:

> *Any employer who* has been accepted by the Trustees for participation in this Pension Fund as herein defined, provided the employer has signed a copy of the Trust Agreement and is required to make contributions to the Fund by a Collective Bargaining Agreement *and/or as approved by the Trustees.* (Emphasis added).

compliance with the PLA and the Trust Agreement. Between November 1997 and March 2006, Durod made contributions in a total amount of $502,321.69, but was late in making contributions for numerous months, and underpaid on the amount of contributions due for several other months.

On or about March 26, 2002, Roderick, on behalf of Durod, entered into "Exhibit A Certification," in which he reaffirmed Durod's assent to the Project Labor Agreement.

On or about May 14, 2003, the Fund notified Durod that it had been selected for an examination of payroll and wage records for the period of January 1, 1997 through December 31, 2002, and requested that Durod make certain records available. Durod refused to comply with the Fund's request.

By working on the Central Artery/Tunnel Project, completing the Fund's Questionnaire, opening an account with the Fund, and by being approved by the Fund's Trustees as a Contributing Employer in the Fund, Durod agreed to be bound by the terms of the PLA and the Trust Agreement since November 1997. Consequently, Durod, by virtue of its being bound to the PLA, is also bound to subsequent agreements entered into by the parties to the PLA concerning the Central Artery/Tunnel Project, including the "Memorandum of Agreement" (MOA), and the "Memorandum of Understanding" (MOU). These documents, taken together, require Durod to make contributions to the Fund for hours worked on the Central Artery/Tunnel Project. Finally, Durod re-confirmed its assent to the PLA on March 26, 2002, when James Roderick entered into an "Exhibit A Certification" on behalf of Durod.

Thus, beginning in 1997, and as reaffirmed in 2002, Durod agreed to be bound by the terms of the PLA, MOA, and MOU, and to the terms of the Fund's Trust Agreement. By assenting to the terms of these agreements, Durod agreed to make timely monthly contributions to the Fund and to submit to an audit at the request of the Fund.

Lastly, assuming, *arguendo,* that the Court determines that Durod only became bound to make contributions to the Fund as of March 26, 2002, Durod admits that it is responsible for paying any past due contributions from that date forward.

**Defendant's Summary of its Position:**

The plaintiff, Langone, claims that the defendant, Durod, is bound to submit to an audit of its payroll and wage records over a seven year period from January 1, 1997 through January 2004 based on the fact that it made union pension contributions since December 1997 and the fact that the union opened an account for it to make contributions.

The defendant, Durod, maintains this argument is contrary to the union's own express definition of who is a "contributing employer" pursuant to Section 1.09(a) of the Rules and Regulations of the Industry Pension Plan which defines such an employer as one who "sign[s] the copy of the Trust Agreement [(or the Standard Participation Form)] and is required to make contributions to the Fund by a Collective Bargaining Agreement and/or is approved by the Trustees." The defendant, Durod, also claims that the evidence will show that neither Durod nor its representatives ever signed any Trust Agreement form or was making any contributions to the Fund under a Collective Bargaining Agreement until at best March 26, 2002 when James Roderick, Jr., President of Durod, Ltd. signed an Assent to be Bound by the Project Labor Agreement. The evidence will show that even as of March 26, 2002, there is no evidence offered by the plaintiff, that Durod signed the Trust Agreement although it is clearly stated in its assent that it was then making contributions pursuant to the Project Labor Agreement. Through March of 2002, Durod, claims that the evidence will show that it never expressed a manifest intent to do anything other than to make contributions to the pension fund. In fact, the union seemed to understand this when it acknowledged on November 19, 1997 that "they [Durod] . . . will not be signing any pension documents."

The defendant, Durod, claims that since there was never any agreement to do anything prior to March 26, 2002 other than make contributions to the pension fund, all requests to audit payroll and wage records of Durod, the imposition of any late fees, and any other fees pre-dating March 26, 2002, are baseless and beyond the scope of the plaintiff's authority.  Since there is no signed Trust Agreement as required by the plaintiff's own definition of contributing employer, Durod, further requests that any late fees, audit rights and other fees associated with this case be denied.

The defendant, Durod, further submits that this action by the pension fund is in retaliation against it for challenging the business agent's strong arm tactics from time to time involving other non-pension related issues and proving to the pension fund as recently as 1998 and 1999 that delinquency notices sent to it regarding contributions were sent in error.  Moreover, Durod submits that Modern Continental, the corporation which was unmistakably bound as a contributing employer, was always ultimately responsible for making timely and accurate contributions to the union funds.  In fact, its conduct (Modern Continental) in failing to make timely payment of wages, adversely affected the ability of Durod's efforts to facilitate payments for its union employees over the years.

Citing only the Trust Agreement, a document which Durod never signed, the plaintiff, Langone, claims a right to assess fees, interest, damages and attorneys' fees dating back nearly nine years.  The defendant, Durod, maintains that there is absolutely no basis in law or fact for such a claim.   In addition, had the Fund obtained records from Durod's prime contractor, Modern Continental, as Durod believed, there would have been no necessity for a suit of any type.

Lastly the evidence will show that following the last conference with the Court, Durod, gathered and made available to a pension fund auditor, wage and payroll records, including certified payroll records which it submitted to Modern Continental maintained and also the pension fund reports that it submitted to the pension fund.  After a few hours worth of review, the auditor made a

list of additional documents which she desired to review.  Durod has not been willing to provide these additional documents.

The defendant, Durod, has submitted to an audit relating to work on the Project although it reserved the right to object thereto.  Durod maintains that it was not obligated to turn over documents other than payroll and wage records for any work unrelated to the Project now sought by the pension fund, including without limitation, Durod vendor histories, invoices to Modern Continental, information concerning workers' compensation injuries, etc.  In addition, Durod has through the present date always been willing to pay the late fees assessed regardless of whether they were owed to avoid the cost of litigating this matter.  The only issue remaining is the accuracy of the Funds' purported audit and Durod is adamantly opposed to such fees given the ability of the Fund to satisfy itself from Modern Continental which it elected not to do and given that considerable effort was made in this litigation to re-review five years of payroll and wage records pre-dating the assent signed by Durod.

**c.      There are no claims that will be waived or not pursued by Plaintiff or Defendant at trial.**

**d.      Statement of Stipulated Facts:**

1.      Defendant New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund") is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

2.    The Fund has its principal office at and is administered from One Wall Street, Burlington, Massachusetts.

3.    The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which has been amended from time to time.

4.    The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the 1997 Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan with amendments through April 30, 2003 ("2003 Pension Plan" or "2003 Plan").  The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund.

5.    Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund.  Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements.

6.    Contributing employers to the Fund are defined by Article I, Section 1.09 of the 2003 Plan.

7.    Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 2003 Plan.

8.    The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides, in relevant part:

(a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

9

(b) Commencing with the ____ day of , _____, and for the duration of the current collective bargaining agreement, between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . .

9.      Charles Langone is the Fund Manager, a position he has held since October 1990, and is responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records.

10.     Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the Fund on remittance reports required by the Trustees.

11.     Paragraph (e) of Appendix A of the Trust Agreement entitles the Trustees to audit a contributing employer's payroll and wage records:

All contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions.

12.     Paragraph (e) of Appendix A of the Trust Agreement provides that if an employer

Fail[s] to make contributions by the 20th day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Agreement  . . . the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish at their discretion.

13.     Defendant Durod, Limited ("Durod") is an employer with a place of business in Marshfield, Massachusetts.

14.     In or about 1997, the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") was entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works; the Building & Construction Trades Council of the Metropolitan District and its affiliated Local Unions; and the Building and Construction Trades Department, AFL-CIO and its Affiliated International Unions and their Affiliated Local Unions.  Durod did not sign this Project Labor Agreement.

15.     Article X, Section 2 of the PLA provides:

>       The Contractor agrees to pay contributions to the established employee benefit funds in the amounts designated in the appropriate Schedules A and/or B; provided, however, that the Contractor and the Union agree that only such bona fide employee benefits as accrue to the direct benefit of the employee (such as pension and annuity, health and welfare, vacation, apprenticeship and training funds, etc.) shall be included in this requirement and paid by the Contractor on this Project.  Bona fide jointly trusteed benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added.
>
>       The Contractor adopts and agrees to be bound by the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds. The Contractor authorizes the parties to such Trust Agreements to appoint trustees and successor trustees to administer the Trust Funds and hereby ratifies and accepts the Trustees so appointed as if made by the Contractor.

16.     On or about August 1, 1997, a Trucking Issues Committee was formed to address relevant issues regarding the application of the Massachusetts Minimum Wage Law and other wage and benefit issues for truckers and trucking companies who provide support for the Central Artery/Tunnel Project.

17.     As a result of the Trucking Issues Committee's formation, the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA") was negotiated.

18.     The members of the Committee consisted of representatives of the trucking industry (trucking subcontractors, brokers, fleet owners, owner/operators), Central Artery/Tunnel

Project general contractors, the Massachusetts Highway Department, Bechtel/Parsons Brinckerhoff, Teamsters Local Union No. 379, the Massachusetts Department of Labor and Workforce Development, and the Construction Industries of Massachusetts.

19.     Section 8A of the MOA provides that "the Contractors agree that they, or their designated approved Subcontractor, will employ the truckers on the CA/T Project and shall ensure payments on their behalf to the Construction Teamsters Health & Welfare Fund and the New England Teamsters & Trucking Industry Pension Fund as required by the Teamsters Agreement . . ."

20.     Section 8B of the MOA states:

> As an alternative method of payment, Project Contractors and Subcontractors who use truck drivers that they consider to be independent contractors shall make fringe benefit fund contributions based on all hours worked by such truck drivers. Project Contractors and Subcontractors that employ this method of payment shall report such hours worked in the same manner as they report the hours worked of employee truck drivers. The characterization of a truck driver as an independent contractor by a Project Contractor or Subcontractor shall not be binding on the Teamsters, Local 379, the truck drivers so characterized, or the Trustees of the Construction Teamsters Health & Welfare Fund and of the New England Teamsters & Trucking Industry Pension Fund.

21.     On or about September 24, 1997, the Massachusetts Highway Department, Bechtel Parsons Brinckerhoff, and Teamsters Local Union No. 379 entered into a "Memorandum of Understanding as to Teamster Benefits (MOU)" in accordance with the Central Artery/Tunnel (CA/T) Project Memorandum of Agreement on Trucking Issues.

22.     Paragraph 1 of the MOU states:

> All employee-drivers who the contractor directly employs and who perform work on the CA/T Project are covered by the CA/T Project Labor Agreement (PLA). Applicable contributions to the Construction Teamsters' Health and Welfare Fund and the New England Teamsters and Trucking Industry Pension Fund (Funds) must be made on their behalf by their

employers and such employee-drivers will receive benefits from the Funds' Plans of Benefits.

23. Paragraph 2 of the MOU provides that all owner-operators who are employers by virtue of employing one or more drivers totaling at least 160 hours in the aggregate for work on the CA/T Project during the 6 month period before certification, or who employ one or more drivers totaling at least 600 hours in the aggregate for work at construction sites other than the CA/T Project during the 12 month period before certification, shall be deemed "employers" or "independent contractors," and contributions shall not be required for their work on the CA/T Project.

24. Paragraph 3 of the MOU provides that "all owner-operators who provide support for CA/T Project Work who do not qualify under paragraph 2, above, shall be deemed, for the purposes of the State Prevailing Wage Law and the PLA, Project employees and contributions must be made on their behalf to the Funds."

25. On November 13, 1997, Mary Moar of the Fund's Contract Department sent Durod and Teamsters Local 379 a letter that stated:

> In accordance with information recently received, we have opened the above account and started billing. According to our records contributions have been received through September 1997.
> This should not be interpreted as acceptance by the Board of Trustees of your participation in this Pension Plan.
> Providing the account is paid up to date with no delinquencies, acceptance of a new employer is generally a formality and principally involves the Board's determination of minimum period of contribution payments required before employees may retire, based on the recommendation of the Fund's actuaries.
> Until the Employer's participation is accepted by the Board, contributions received will be held in escrow, and the Employees reported on this account will not receive Pension Credit for these escrow payments.
> Enclosed please find a Questionnaire requesting information pertinent to your participation in this Fund. Please complete this Questionnaire and return to this office as soon as possible.

26. On November 13, 1997, Mary Moar sent Durod another letter that stated:

> Enclosed please find remittance report[s] for your use in reporting monthly Pension Fund contributions for your employees under the above local/code number, for the period October 1997.
>
> Please fill in the report following the instructions on the reverse side of the blue copy and return to this office together with your check for contributions, Hereafter you will received preprinted reports each month.
>
> The Rules of the Fund require that before an Employer may be submitted to the board of Trustees for acceptance as a contributor, its account must be paid up-to-date and all required documents must be received. Therefore, contributions should be forwarded promptly. Monthly payments are due within twenty days after the last day of the month reported.
>
> If you require further assistance, please contact this office.

27. In a letter dated November 19, 1997, Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379, wrote to the Fund: "Please open an account for Durod Ltd. They will be working under the Central Artery Tunnel Project Agreement and will not be signing any pension documents."

28. On November 20, 1997, Durod completed a document titled "New England Teamsters and Trucking Industry Pension Fund Questionnaire" from the Fund. In response to the question, "Is your current Collective Bargaining Agreement with the above Employer your first Agreement covering this bargaining unit?", James Roderick, Jr., President of Durod, checked "Yes".

29. Article IV of the Trust Agreement provides that the Trustees "shall have the power to construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees . . ."

30. Article I, Section 1.09 of the Rules and Regulations of the Pension Plan define a contributing employer as:

> Any employer who has been accepted by the Trustees for participation in this Pension Fund as herein defined, provided the employer has signed a copy of the Trust Agreement and is required to make contributions to the

Fund by a Collective Bargaining Agreement and/or as approved by the
Trustees.

31.    At the March 1998 Trustees Meeting, the Trustees of the Fund approved Durod as a

Contributing Employer in the Fund with a participation date commencing July, 1, 1997.

32.    In a letter dated March 28, 1998 Charles Langone, Fund Manager, sent Durod a letter

notifying Durod that it had been accepted as a Contributing Employer in the Fund with a

participation date commencing July 1, 1997.

33.    On or about March 26, 2002, James R. Roderick, Jr., as President of Durod, entered into an

"Exhibit A Certification" whereby Durod assented to the Project Labor Agreement.

Paragraph 9 of the Certification states as follows:

> I hereby agree to comply with and be bound to the Project Labor Agreement,
> Division 1, Special Provisions covering work to be performed on the Central
> Artery/Tunnel Project.  The terms and conditions of the Project Labor
> Agreement have been entered into by the signatory unions and
> Bechtel/Parsons Brinckerhoff and shall apply with respect to the work
> covered by all contracts on said Project.

34.    After June 1997 and March 2006, Durod made contributions to the Fund for the time it

worked on the Central Artery/Tunnel Project in accordance with its understanding that it

was so required to make these contributions to the pension fund  and likewise submitted

remittance reports for those contributions.

35.    As a result of alleged late payments made by Durod on the contributions due, the Fund

assessed $873.98 in late charges against Durod.  Durod has not made payment on the

accumulated interest; however, has offered repeatedly to pay these amounts in connection

with this case.

36.    In a letter dated May 14, 2003, Fund Manager Charles Langone notified Durod that it had

been selected for an examination of payroll and wage records for the period of January 1,

1997 through December 31, 2002, and requested that Durod make available weekly payroll registers; IRS Forms W-2, 941, and 1099; and OSHA logs where applicable.

37.    In a letter dated December 10, 2003, and sent via certified mail to James R. Roderick, Jr., President of Defendant Durod, Counsel for the Fund reiterated the Fund's demand that Durod allow the Fund's auditor to conduct a payroll audit pursuant to the PLA and the Fund's Trust Agreement.

38.    Durod has never signed the Trust Agreement.

39.    In February and March 2007 Coleen Barett Holland, payroll auditor for New England Teamsters & Trucking Industry Pension Fund conducted two separate payroll audits.

e.    **Contested Issues of Fact**:

1.    Whether Durod was bound by the terms of the Project Labor Agreement.

2.    Whether Durod was bound to the terms of the Trust Agreement.

3.    Whether Durod was bound by the terms of the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA").

4.    Whether Durod was bound by the terms of the Memorandum of Understanding as to Teamster Benefits" ("MOU").

5.    Whether Durod complied with the terms of the Project Labor Agreement.

6.    Whether Durod complied with the terms of the Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA").

7.    Whether Durod complied with the terms of the Memorandum of Understanding as to Teamster Benefits" ("MOU").

8.  Whether the Fund accepted Durod as a participant in the Pension Plan prior to March 26, 2002.

9.  Whether in March 1998, at the Fund's Trustees Meeting, the Questionnaire, along with the November 19, 1997 letter from Local 379 to the Fund, and the two November 13, 1997 letters from the Fund to Durod, were submitted to the Trustees for their consideration.

10. Whether at the March 1998 Trustees Meeting, the Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were made in the case of contractors working on the Big Dig based upon the nature of the project and the existence of the PLA.

11. Whether following receipt of Mr. Langone's March 23, 1998 letter, Durod never disputed its acceptance as a participating employer in the Fund's Pension Plan.

12. Whether the audit of Durod LTD accurately found a delinquency in payments of $48,906.82 between the years 1997 through 2004, with interest incurring at a rate of $326.05 per month for a total liability of $52,167.32.

13. Whether the audit of Durod LTD C.A.T./Hired Trucks, accurately found a delinquency in payments of 5,365.67 for the years of 2003 through 2005, with interest incurring at a rate of $35.77 for a total liability of $5,723.37.

14. Whether Defendant is responsible for delinquent contributions and interest pursuant to the two audits conducted in February and March 2007 in the amounts of $52,167.32 and $45,723.37, for a total of $97,890.69.

15.     Whether Defendant is delinquent in interest and past due contributions for underpayments in the amount of $1,138.27.

16.     Whether Durod is a contributing employer within the meaning of Section 1.09(a) of the Rules and Regulations of the Industry Pension Plan.

17.     Whether Durod made late payments to the Pension Fund and when.

18.     Whether Durod underpaid the Pension Fund and in what amounts.

19.     Whether Durod is responsible for the payment of liquidated damages for past due contributions.

20.     Whether Durod is responsible for the payment of the Fund's attorney's fees  and costs incurred in having to institute this action.

f.     **There are no jurisdictional questions**.

g.     **Ther following motions are pending:**

1.     Motion to Withdraw as Defendant's Counsel

2.     Motion for Stay of Proceedings by Defendant's Counsel

h.     **Issues of Law**.  The disputed points of law are fully set forth in the parties' memoranda in support of, and in opposition to, Plaintiff's Motion for Summary Judgment and Plaintiff's Motion for Reconsideration of the Court's Decision to Deny Plaintiff's Motion for Summary Judgment . Specifically:

18

1.      Whether, starting in November 1997, Defendant Durod was bound to the terms of the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

2.      Whether, starting in November 1997, Defendant Durod was bound to the terms of the Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues ("MOA") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

3.      Whether, starting in November 1997, Defendant Durod was bound to the terms of the Memorandum of Understanding as to Teamster Benefits ("MOU") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

4.      Whether by working on the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement, and thereby agreeing to work under the terms of the PLA, MOA, and MOU, Durod also agreed to be subject to the New England Teamsters and Trucking Industry Pension Funds' Agreement and Declaration of Trust ("Trust Agreement"), which requires that contributions be made to the Fund for each and every employee performing work within the scope of and/or covered by a Teamsters collective bargaining agreement.

5.      Whether Durod assented to be bound to the PLA, MOA, MOU, and Trust Agreement on or about November 13, 1997, when the New England Teamsters and Trucking Industry Pension Fund opened an account for Durod and sent Durod remittance reports on which it was to report monthly pension contributions for its employees, and when Durod completed a Questionnaire supplied by the Fund.

6.    Whether Durod manifested an intent to be bound to the PLA, MOA, MOU, and Trust Agreement when it began making monthly pension contributions to the Fund in November 1997, and continued to make contributions at least through January 2004.

7.    Whether the Fund's Trustees' acceptance of Durod at the March 1998 Trustees Meeting as a Contributing Employer with a participation date commencing July 1, 1997, and subsequent letter informing Durod of its acceptance, bound Durod to the PLA, MOA, MOU, and the Fund's Trust Agreement.

8.    Whether the fact that Durod did not sign the PLA, MOA, MOU, or the Fund's Trust Agreement prior to March 26, 2002 is not dispositive because at the March 1998 Trustees Meeting, the Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were made in the case of contractors working on the Big Dig based upon the nature of the project and the existence of the PLA.

9.    Whether the fact that Durod did not sign the PLA, MOA, MOU, or the Fund's Trust Agreement prior to March 26, 2002 is not dispositive because a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement; all that is required is a written agreement.

10.   Whether the PLA, MOA and, MOU constitute written agreements which collectively specify the detailed basis on which contributions are to be made to the Fund.

11.   Whether the fact that Durod did not sign the Trust Agreement is irrelevant because the only requirement is that there is a written agreement detailing the basis for payments.

12.     Whether all that is required for a collective bargaining agreement to be binding is conduct manifesting an intention to be bound by the terms of an agreement.

13.     Whether Durod's course of conduct in making contributions for seven years manifested an intent to be bound to the PLA, MOA, MOU, and Trust Agreement.

14.     Whether by assenting to the PLA, MOA, MOU, and Trust Agreement, by making contributions to the Fund and by being accepted by the Trustees of the Fund as a contributing employer in the Fund, Durod also assented to submitting to a payroll audit by the Fund, and to having to pay interest on past due contributions and attorneys' fees incurred in collecting such delinquent contributions.

15.     Whether by signing the "Exhibit A Certification" on March 26, 2002, Durod assented to the terms of the PLA, MOA, and MOU, and if so, whether by assenting to the terms of the PLA, MOA, and MOU, Durod assented to be bound to the Trust Agreement.

16.     Whether, pursuant to audits conducted in February and March 2007, Durod is responsible for delinquent contributions and interest in the following amounts: $52,167.32 and $5,723.37, for a total of $57,890.69.

17.     Whether the Trustees of the Fund are entitled to reasonable attorneys' fees and costs in connection with an action to collect delinquent contributions.

18.     Whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g) provides for the payment of attorneys' fees to benefit funds in connection with an action to collect delinquent fringe benefit contributions.

19.     Whether Durod's delinquency amounts relate to alleged minimum hours for contribution or actual hours worked on the Big Dig work;

i.     **There are no requested amendments to the pleadings**.

j.    **There are no additional matters to aid in the disposition of the action**.

k.    **The parties anticipate that the trial should not last more than two days**.

l.    **Plaintiff's witnesses:**

Fund Manager, Charles Langone, One Wall Street, 4th Floor, Burlington, MA 01803, (781)-345-4400, has information relative to the obligation of defendant Durod, Ltd. ("Durod") to make contributions to the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund") and its obligation to submit to an audit.

John Mahoney, Secretary/Treasurer of Teamster Local Union 379, 29 Farragut Road, South Boston, MA 02127, (617) 464-3379, has information relative to the obligation of Defendant Durod to make contributions to the Pension Fund.

Paul V. Walsh, Teamster Local Union 379, 29 Farragut Road, South Boston, MA 02127, (617) 464-3379, has information relative to the obligation of Defendant Durod to make contributions to the Pension Fund.

Colleen Barrett Holland, Payroll Auditor, New England Teamsters & Trucking Industry Pension Fund, 1 Wall Street, Burlington, Massachusetts.

Plaintiff reserves the right to amend this list, including adding any specific individuals employed by Durod during the periods in question for which it is alleged contributions were not specifically paid to the Fund on their behalf.

**Defendant's Witnesses:**

James R. Roderick, Jr., President of Durod, Ltd., 147 Claypit Road, Marshfield, MA has information concerning when and why contributions were made and with what understandings, submitted pension reports and certified payroll records to Fund and Modern Continental.

James R. Roderick, Sr., Durod, Ltd., 147 Claypit Road, Marshfield, MA.

Ginger Wolk, c/o Durod, 147 Claypit Rd., Marshfield, MA.    Secretary/Bookkeeper for during in 1998 will testify that Durod worked for another contributing employer.

Heather Crosby c/o Durod, c/o Durod, 147 Claypit Rd., Marshfield, MA. Secretary/Bookkeeper for during in 1998 will testify that Durod worked for another contributing employer.

Keeper of the Records, New England Teamsters & Trucking Industry Pension Fund, 1 Wall Street, Burlington, Massachusetts. The Pension fund possesses certified payroll records, pension fund reports, a payment history, information concerning contractors for whom Durod was working as a subcontractor and who submitted reports involving union workers in the employ of Durod but working for another contributing employer.

Kenneth Cook, Supervisor, DATA processing, New England Teamsters & Trucking Industry Pension Fund, 1 Wall Street, Burlington, Massachusetts. Will authenticate billing errors by Pension Fund to Durod.

Colleen Barrett Holland, Payroll Auditor, New England Teamsters & Trucking Industry Pension Fund, 1 Wall Street, Burlington, Massachusetts.

Joseph Clougherty, CA/T Subcontractor/Project Manager, c/o Modern Continental Companies, Corporate Headquarters, 600 Memorial Drive, Cambridge, MA 02139. Mr. Clougherty will testify concerning pension fund contributions paid by Modern Continental involving Durod, payment history to Durod, and certified payroll records.

Theresa Shanley, CA/T, Trucking Issues Coordinator, One Kneeland Street, Boston, Massachusetts. Can corroborate understanding that records would be obtained via Modern Continental.

Keeper of Records, Modern Continental Companies, Corporate Headquarters, 600 Memorial Drive, Cambridge, MA 02139. Modern possesses certified payroll records, pension fund reports, payment ledgers to Durod and other documentation not currently in the possession of Durod.

Keeper of the Records, Twin Trucking, Inc., 47 Audrey Road, Belmont, MA    Twin possesses records for work when Durod was working as a subcontractor.

Keeper of the Records, Zam-Tek, Inc., c/o Sharon Mills, 116 Mass. Ave, Brockton, Massachusetts. Zam-Tek or Ms. Mills possess record for work when Durod was working as a subcontractor.

Keeper of the Records, E.J. Smith Trucking, Inc. 259 Quincy Street, Dorchester, Massachusetts c/o Earnest J. Smith, 435 Foundry Street, North Easton, MA. Smith possesses records for work when Durod was working as a subcontractor.

All of plaintiffs' witnesses.

Defendant reserves the right to amend this list prior to trial.

m.   **Proposed Exhibits**:

1.   New England Teamsters and Trucking Industry Pension Fund Restated Agreement and Declaration of Trust.

2.   1997 Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan with amendments through April 30, 2003.

3.   Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works; the Building & Construction Trades Council of the Metropolitan District and its affiliated Local Unions; and the Building and Construction Trades Department, AFL-CIO and its Affiliated International Unions and their Affiliated Local Unions.

4.   Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues ("MOA").

5.   Memorandum of Understanding as to Teamster Benefits ("MOU")

6.   November 13, 1997 letter from Mary Moar of the Fund's Contract Department to Durod and Paul Walsh of Teamsters Local 379 regarding the opening of an account for Durod.

7.   November 13, 1997 letter from Ms. Moar to Durod enclosing Fund remittance reports/

8.   November 19, 1997 letter from Paul Walsh, Secretary-Treasurer of Teamsters Local 379 to Mary Moar.

9.   List of New Employers approved by the Trustees of the Fund at the March 1998 Trustees Meeting.

10.   March 23, 1998 letter from Charles Langone, Fund Manager, to Durod stating that Durod had been approved by the Fund's Trustees as a Contributing Employer.

11.   New England Teamsters and Trucking Industry Pension Fund questionnaire completed by James Roderick, Jr., President of Durod, dated November 20, 1997.

12.   Remittance reports submitted by Durod to the Fund from 1997 through 2006.

13.   Copies of various checks from Defendant Durod for Pension Contributions.

14.   "Exhibit A Certification" executed by James R. Roderick Jr., President of Durod, dated March 26, 2002.

15.     Itemized summation of accumulated interest and underpayments owed by Durod to the New England Teamsters and Trucking Industry Pension Fund.   (Not an agreed exhibit).

16.     May 14, 2003 letter from Fund Manager Charles Langone to Durod requesting that Durod submit to a payroll audit.

17.     December 10, 2003 letter from Catherine M. Campbell, Esq., Feinberg, Campbell & Zack, P.C., counsel for the Fund, to James R. Roderick, Jr., President of Durod, requesting that the Fund be permitted to conduct a payroll audit of Durod.

18.     Letter dated February 22, 1999 from Durod to Pension Fund regarding error in Pension Fund billing to Durod.

19.     Delinquency Notice dated September 1, 1998 with handwritten note from Durod dated 9/2/98

20.     Letter dated February 23, 1999 from Pension Fund to Durod acknowledging billing error and credit to Durod.

21.     Records from Modern Continental, Zam-tek, Twin Trucking, Inc., E.J. Smith, Inc.

22.     Audits conducted by Coleen Barett Holland, payroll auditor for New England Teamsters & Trucking Industry Pension Fund, on Durod LTD and Durod LTD C.A.T./Hired Trucks, in February and March 2007.


n.     **Appendix containing proposed findings of fact and rulings of law- see attached**.

Respectfully submitted,

For the Plaintiff,                                    For the Defendant

CHARLES LANGONE, as                       DUROD, LIMITED
FUND MANAGER of the
NEW ENGLAND TEAMSTERS &
TRUCKING INDUSTRY
PENSION FUND

By his Attorneys,                                    By its Attorneys,


/S/ Jonathan M. Conti                            /S/ Robert W. Galvin
Jonathan M. Conti, BBO #657163           Robert W. Galvin, BBO # 561397
Feinberg, Campbell & Zack, P.C.            Galvin & Galvin, SP
177 Milk Street                                       10 Enterprise Street, Suite 3
 Boston, MA 02109                               Duxbury, MA 02332-3315
(617) 338-1976                                      (781) 934-5678

Dated: January 25, 2008                        Dated: January 25, 2008