UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, | ) ) ) ) ) |  |
| Plaintiff, | ) ) | C.A. No. 04cv10039 RCL |
| v. | ) ) |  |
| DUROD, LIMITED | ) ) |  |
| Defendant. | ) ) ) |  |

## TRIAL APPENDIX

Plaintiff's Proposed Findings of Fact:

1.  Defendant New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund") is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

2.  The Fund has its principal office at and is administered from One Wall Street, Burlington, Massachusetts.

3.  The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which has been amended from time to time.

4.  The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the 1997 Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan with amendments through April 30,

2003 ("2003 Pension Plan" or "2003 Plan"). The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund.

5. Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements.

6. Contributing employers to the Fund are defined by Article I, Section 1.09 of the 2003 Plan.

7. Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 2003 Plan.

8. The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which provides, in relevant part:

> (a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
>
> (b) Commencing with the ____ day of , _____, and for the duration of the current collective bargaining agreement, between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . .

9. Charles Langone is the Fund Manager, a position he has held since October 1990, and is responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records.

10. Article V, Section 5 of the Trust Agreement provides that each contributing employer is to report contributions to the Fund on remittance reports required by the Trustees.

11. Paragraph (e) of Appendix A of the Trust Agreement entitles the Trustees to audit a contributing employer's payroll and wage records:

> All contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions.

12. Paragraph (e) of Appendix A of the Trust Agreement provides that if an employer Fail[s] to make contributions by the 20th day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Agreement . . . the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish at their discretion.

13. Defendant Durod, Limited ("Durod") is an employer with a place of business in Marshfield, Massachusetts.

14. In or about 1997, the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") was entered into by and between Bechtel/Parsons Brinckerhoff on behalf of the Massachusetts Department of Public Works; the Building & Construction Trades

      Council of the Metropolitan District and its affiliated Local Unions; and the Building and Construction Trades Department, AFL-CIO and its Affiliated International Unions and their Affiliated Local Unions.

15. Article X, Section 2 of the PLA provides:

   > The Contractor agrees to pay contributions to the established employee benefit funds in the amounts designated in the appropriate Schedules A and/or B; provided, however, that the Contractor and the Union agree that only such bona fide employee benefits as accrue to the direct benefit of the employee (such as pension and annuity, health and welfare, vacation, apprenticeship and training funds, etc.) shall be included in this requirement and paid by the Contractor on this Project. Bona fide jointly trusteed benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added.
   >
   > The Contractor adopts and agrees to be bound by the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds. The Contractor authorizes the parties to such Trust Agreements to appoint trustees and successor trustees to administer the Trust Funds and hereby ratifies and accepts the Trustees so appointed as if made by the Contractor.

16. On or about August 1, 1997, a Trucking Issues Committee was formed to address relevant issues regarding the application of the Massachusetts Minimum Wage Law and other wage and benefit issues for truckers and trucking companies who provide support for the Central Artery/Tunnel Project.

17. As a result of the Trucking Issues Committee's formation, the "Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues" ("MOA") was negotiated.

18. The members of the Committee consisted of representatives of the trucking industry (trucking subcontractors, brokers, fleet owners, owner/operators), Central Artery/Tunnel Project general contractors, the Massachusetts Highway Department, Bechtel/Parsons Brinckerhoff, Teamsters Local Union No. 379, the Massachusetts Department of Labor and Workforce Development, and the Construction Industries of Massachusetts.

19. Section 8A of the MOA provides that "the Contractors agree that they, or their designated approved Subcontractor, will employ the truckers on the CA/T Project and shall ensure payments on their behalf to the Construction Teamsters Health & Welfare Fund and the New England Teamsters & Trucking Industry Pension Fund as required by the Teamsters Agreement . . ."

20. Section 8B of the MOA states:

> As an alternative method of payment, Project Contractors and Subcontractors who use truck drivers that they consider to be independent contractors shall make fringe benefit fund contributions based on all hours worked by such truck drivers. Project Contractors and Subcontractors that employ this method of payment shall report such hours worked in the same manner as they report the hours worked of employee truck drivers. The characterization of a truck driver as an independent contractor by a Project Contractor or Subcontractor shall not be binding on the Teamsters, Local 379, the truck drivers so characterized, or the Trustees of the Construction Teamsters Health & Welfare Fund and of the New England Teamsters & Trucking Industry Pension Fund.

21. On or about September 24, 1997, the Massachusetts Highway Department, Bechtel Parsons Brinckerhoff, and Teamsters Local Union No. 379 entered into a "Memorandum of Understanding as to Teamster Benefits (MOU)" in accordance with the Central Artery/Tunnel (CA/T) Project Memorandum of Agreement on Trucking Issues.

22. Paragraph 1 of the MOU states:

> All employee-drivers who the contractor directly employs and who perform work on the CA/T Project are covered by the CA/T Project Labor Agreement (PLA). Applicable contributions to the Construction Teamsters' Health and Welfare Fund and the New England Teamsters and Trucking Industry Pension Fund (Funds) must be made on their behalf by their employers and such employee-drivers will receive benefits from the Funds' Plans of Benefits.

23. Paragraph 2 of the MOU provides that all owner-operators who are employers by virtue of employing one or more drivers totaling at least 160 hours in the aggregate for work on the CA/T Project during the 6 month period before certification, or who employ one or more drivers totaling at least 600 hours in the aggregate for work at construction sites other than the CA/T Project during the 12 month period before certification, shall be deemed "employers" or "independent contractors," and contributions shall not be required for their work on the CA/T Project.

24. Paragraph 3 of the MOU provides that "all owner-operators who provide support for CA/T Project Work who do not qualify under paragraph 2, above, shall be deemed, for the purposes of the State Prevailing Wage Law and the PLA, Project employees and contributions must be made on their behalf to the Funds."

25. Durod made its first contributions to the Fund on the Central Artery Tunnel Project in November 1997.

26. On November 13, 1997, Mary Moar of the Fund's Contract Department sent Durod and Teamsters Local 379 a letter that stated:

> In accordance with information recently received, we have opened the above account and started billing. According to our records contributions have been received through September 1997.
> This should not be interpreted as acceptance by the Board of Trustees of your participation in this Pension Plan.
> Providing the account is paid up to date with no delinquencies, acceptance of a new employer is generally a formality and principally involves the Board's determination of minimum period of contribution payments required before employees may retire, based on the recommendation of the Fund's actuaries.
> Until the Employer's participation is accepted by the Board, contributions received will be held in escrow, and the Employees reported on this account will not receive Pension Credit for these escrow payments.
> Enclosed please find a Questionnaire requesting information pertinent to your participation in this Fund. Please complete this Questionnaire and return to this office as soon as possible.

6

27. On November 13, 1997, Mary Moar sent Durod another letter that stated:

   > Enclosed please find remittance report[s] for your use in reporting monthly Pension Fund contributions for your employees under the above local/code number, for the period October 1997.
   > Please fill in the report following the instructions on the reverse side of the blue copy and return to this office together with your check for contributions, Hereafter you will received preprinted reports each month.
   > The Rules of the Fund require that before an Employer may be submitted to the board of Trustees for acceptance as a contributor, its account must be paid up-to-date and all required documents must be received. Therefore, contributions should be forwarded promptly.  Monthly payments are due within twenty days after the last day of the month reported.
   > If you require further assistance, please contact this office.

28. In a letter dated November 19, 1997, Paul Walsh, Secretary-Treasurer and Principal Executive Officer of Teamsters Local 379, wrote to the Fund: "Please open an account for Durod Ltd.  They will be working under the Central Artery Tunnel Project Agreement and will not be signing any pension documents."

29. On November 20, 1997, Durod completed the questionnaire from the Fund.  In response to the question, "Is your current Collective Bargaining Agreement with the above Employer your first Agreement covering this bargaining unit?", James Roderick, Jr., President of Durod, checked "Yes".

30. In March 1998, at the Fund's Trustees Meeting, the Questionnaire, along with the November 19, 1997 letter from Local 379 to the Fund, and the two November 13, 1997 letters from the Fund to Durod, were submitted to the Trustees for their consideration.

31. At the March 1998 Trustees Meeting, the Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were

7

made in the case of contractors working on the Big Dig based upon the nature of the project and the existence of the PLA.

32. Article IV of the Trust Agreement provides that the Trustees "shall have the power to construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees . . ."

33. Article I, Section 1.09 of the Rules and Regulations of the Pension Plan define a contributing employer as:

> Any employer who has been accepted by the Trustees for participation in this Pension Fund as herein defined, provided the employer has signed a copy of the Trust Agreement and is required to make contributions to the Fund by a Collective Bargaining Agreement and/or as approved by the Trustees.

34. In March 1998, at the Fund's Trustees Meeting, the Trustees of the Fund approved Durod as a Contributing Employer in the Fund with a participation date commencing July 1, 1997.

35. In a letter dated March 28, 1998, Charles Langone, Fund Manager, sent Durod a letter notifying Durod that it had been accepted as a Contributing Employer in the Fund with a participation date commencing July 1, 1997.

36. Following receipt of Mr. Langone's March 23, 1998 letter, Durod never disputed its acceptance as a participating employer in the Fund's Pension Plan.

37. On or about March 26, 2002, James R. Roderick, Jr., as President of Durod, entered into an "Exhibit A Certification" whereby Durod assented to the Project Labor Agreement. Paragraph 9 of the Certification states as follows:

>I hereby agree to comply with and be bound to the Project Labor Agreement, Division 1, Special Provisions covering work to be performed on the Central Artery/Tunnel Project. The terms and conditions of the Project Labor Agreement have been entered into by the signatory unions and Bechtel/Parsons Brinckerhoff and shall apply with respect to the work covered by all contracts on said Project.

38. Between November 1997 and March 2006, Durod made contributions to the Fund for the time it worked on the Central Artery/Tunnel Project in the total amount of $502,321.69, and submitted remittance reports for those contributions.

39. Durod made its contributions to the Fund for the months of June, July, and August 1999 in October 1999, after the date on which they were due.

40. Durod made its contributions to the Fund for April 2000 in June 2000, after the date on which they were due.

41. Durod made contributions to the Fund for October 2001 in December 2001, after the date on which they were due.

42. Durod made contributions to the Fund for September, October, November, and December 2002, along with contributions for January 2003, in April 2003, after the date on which they were due.

43. Durod made contributions to the Fund for March 2003 in May 2003, after the date on which they were due.

44. Durod made contributions to the Fund for July 2003 in October 2003, after the date on which they were due.

45. Durod made contributions to the Fund for August, September, and October 2003 in January 2004, after the date on which they were due.

46. Durod made contributions to the Fund for November 2003 in January 2004, after the date on which they were due.

47. Durod made contributions to the Fund for December 2003 and January 2004 in April 2004, after the date on which they were due.

48. Durod made contributions to the Fund for October 2004, November 2004, December 2004, January 2005, February 2005, March 2005, April 2005, and May 2005 in July 2005, after the date on which they were due.

49. Durod made contributions to the Fund for June 2005 in October 2005, after the date on which they were due.

50. Durod made contributions to the Fund for July 2005, August 2005, September 2005 and October 2005 in December 2005, after the date on which they were due.

51. Durod made contributions to the Fund for November 2005, December 2005, January 2006, and February 2006 in March 2006 after the date on which they were due.

52. Durod made contributions to the Fund for March 2006 in June 2006 after the date on which they were due.

53. Durod made contributions to the Fund for April 2006 and May 2006 in August 2006 after the date on which they were due.

54. Durod made contributions to the Fund for June 2006, July 2006, August 2006, September 2006 and October 2006 in December 2006 after the date on which they were due.

55. Durod made contributions to the Fund for November 2006 and December 2006 in February 2007 after the date on which they were due.

56. Durod made contributions to the Fund for January 2007 and February 2007 in March 2007 after the date on which they were due.

57. Durod made contributions to the Fund for March 2007, April 2007 and May 2007 in July 2007 after the date on which they were due.

58. As a result of the late payments made by Durod on the contributions due, the Fund assessed $873.98 in late charges against Durod. Durod has not made payment on the accumulated interest.

59. Durod made pension contributions for May 2000, but underpaid by $87.58. Durod also underpaid its pension contributions for December 2000 by $176.26 and for January 2004 by $0.45, for a total underpayment of $264.29.

60. In a letter dated May 14, 2003, Fund Manager Charles Langone notified Durod that it had been selected for an examination of payroll and wage records for the period of January 1, 1997 through December 31, 2002, and requested that Durod make available weekly payroll registers; IRS Forms W-2, 941, and 1099; and OSHA logs where applicable.

61. In a letter dated December 10, 2003, and sent via certified mail to James R. Roderick, Jr., President of Defendant Durod, Counsel for the Fund reiterated the Fund's demand that Durod allow the Fund's auditor to conduct a payroll audit pursuant to the PLA and the Fund's Trust Agreement.

62. In February and March 2007 Coleen Barett Holland, payroll auditor for New England Teamsters & Trucking Industry Pension Fund, conducted two separate payroll audits. The audit of Durod LTD found a delinquency in payments of $48,906.82 between the years 1997 through 2004, with interest incurring at a rate of $326.05 per month for a total liability of $52,167.32. The audit of Durod LTD C.A.T./Hired Trucks, found a

       delinquency in payments of 5,365.67 for the years of 2003 through 2005, with interest incurring at a rate of $35.77 for a total liability of $5,723.37.

63. Durod owes the Funds delinquent contributions and interest in the amounts of $52,167.32 and $5,723.37, for a total of $57,890.69.

64. Durod owes late charges and underpayments to the Fund in the amount of 1,138.27.

65. Durod is responsible for paying the Fund's attorneys' fees in having to bring this action.

Defendant's Proposed Findings of Fact:

1. Durod was not a signatory to the Project Labor Agreement.

2. Durod never signed the Trust Agreement.

3. Durod was not a contributing employer as defined by Article I, Section 1.09 of the 2003 Plan until after March 26, 2002.

4. During certain times that Durod was working on the CA/T project, Durod submitted remittance reports to directly the pension fund. There were several points during the work on the CA/T project that Durod's union employees worked for other subcontractors and during those times the other subcontractors were responsible for submission of pension remission reports and contributions to the pension fund.

5. Durod is willing to submit to an audit from and after March 26, 2002 the date it consented to be bound by the PLA and Trust Agreement; however, that audit right is not unlimited. The audit is limited to payroll records for union employees the CA/T project, certified payrolls and remittance reports.

6. Durod is not responsible for any late fees, attorneys' fees or other costs associated with anything which occurred prior to March 26, 2002.

7. Durod made its payroll records, certified payrolls and remittance reports available for audit and the Pension Fund requested additional documents beyond the scope of CA/T work.

8. Pension Fund selected Durod for audit as a result of Durod's position on unrelated union issues and has communicated with the business agent of the health and welfare fund concerning these issues.

9. Durod offered to pay the alleged delinquency fees to avoid cost of litigating this case but not as an admission there was any delinquency.

10. Certain of the delinquencies in the payment of pension fund contributions resulted from Modern Continental, the prime contractors, failure to pay Durod in a timely fashion.

**PLAINTIFF'S PROPOSED RULINGS OF LAW**

1. Starting in November 1997, Defendant Durod was bound to the terms of the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement ("PLA") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

2. Starting in November 1997, Defendant Durod was bound to the terms of the Central Artery/Tunnel Project Memorandum of Agreement on Trucking Issues ("MOA") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

3. Starting in November 1997, Defendant Durod was bound to the terms of the Memorandum of Understanding as to Teamster Benefits ("MOU") by virtue of having begun work as a subcontractor on the Central Artery (I-93)/Tunnel (I-90) Project.

4. By working on the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement, and thereby agreeing to work under the terms of the PLA, MOA, and MOU, Durod also agreed to be subject to the New England Teamsters and Trucking Industry Pension Funds' Agreement and Declaration of Trust ("Trust Agreement"), which requires that contributions be made to the Fund for each and every employee performing work within the scope of and/or covered by a Teamsters collective bargaining agreement.

5. Durod assented to be bound to the PLA, MOA, MOU, and Trust Agreement on or about November 13, 1997, when the New England Teamsters and Trucking Industry Pension Fund opened an account for Durod and sent Durod remittance reports on which it was to report monthly pension contributions for its employees, and when Durod completed a Questionnaire supplied by the Fund.

6. Durod manifested an intent to be bound to the PLA, MOA, MOU, and Trust Agreement when it began making monthly pension contributions to the Fund in November 1997, and continued to make contributions at least through January 2004.

7. The Fund's Trustees' acceptance of Durod at the March 1998 Trustees Meeting as a Contributing Employer with a participation date commencing July 1, 1997, and subsequent letter informing Durod of its acceptance, bound Durod to the PLA, MOA, MOU, and the Fund's Trust Agreement.

8. The fact that Durod did not sign the PLA, MOA, MOU, or the Fund's Trust Agreement prior to March 26, 2002 is not dispositive because at the March 1998 Trustees Meeting, the Trustees voted to accept Durod as a Contributing Employer in the Fund, waiving any requirement that Durod sign the Trust Agreement or the collective bargaining agreement because exceptions were made in the case of

14

   contractors working on the Big Dig based upon the nature of the project and the existence of the PLA.

9.  The fact that Durod did not sign the PLA, MOA, MOU, or the Fund's Trust Agreement prior to March 26, 2002 is not dispositive because a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement; all that is required is a written agreement. *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d 761 (7th Cir. 2004).

10.  The PLA, MOA and, MOU constitute written agreements which collectively specify the detailed basis on which contributions are to be made to the Fund.

11.  The fact that Durod did not sign the Trust Agreement is irrelevant, as employers are not required to be signatories to the actual trust agreement. The only requirement is that there is a written agreement detailing the basis for payments. *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Mergentime Corporation,* 743 F. Supp. 422 (D. Md. 1990).

12.  A collective bargaining agreement is not dependent on the reduction in writing of the parties' intention to be bound. All that is required is conduct manifesting an intention to be bound by the terms of an agreement. Durod's course of conduct in making contributions for seven years manifested an intent to be bound to the PLA, MOA, MOU, and Trust Agreement. *Bricklayers Local 21 v. Banner Restoration, Incorporated,* 385 F.3d 761 (7th Cir. 2004).

13.  By assenting to the PLA, MOA, MOU, and Trust Agreement, and by making contributions to the Fund, Durod also assented to submitting to a payroll audit by the Fund, and to having to pay interest on past due contributions and attorneys' fees

   incurred in collecting such delinquent contributions. *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Mergentime Corporation,* 743 F. Supp. 422 (D. Md. 1990).

14. By signing the "Exhibit A Certification" on March 26, 2002, Durod assented to the terms of the PLA, MOA, and MOU, and by assenting to the terms of the PLA, MOA, and MOU, Durod assented to be bound to the Trust Agreement.

15. Pursuant to audits conducted in February and March 2007, Durod is responsible for delinquent contributions and interest in the following amounts: $52,167.32 and $5,723.37, for a total of $57,890.69.

16. The Trust Agreement provides that when there is a default in payment by an employer, the Trustees of the Fund are entitled to reasonable attorneys' fees and costs in connection with an action to collect delinquent contributions.

17. The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g) provides for the payment of attorneys' fees to benefit funds in connection with an action to collect delinquent fringe benefit contributions.

Defendant's Proposed Rulings of Law:

1. Durod was not a contributing employer as defined by Article I, Section 1.09 of the 2003 Plan until after March 26, 2002 and as such is not required to submit to any audit, is not responsible for any late fees or collection costs prior to that date.

2. Durod is subject to audit from and after March 26, 2002 and offered to provide certified payroll records, remittance reports and related documents

>   for CA/T work for those months when Durod was working on the job and not when its employees went to work for other subcontractors.

3. Modern Continental is primarily responsible for the timely payment of pension fund contributions and submission of certified payroll records. Moderns' records show that the pension fund was paid what it should have been paid.

4. Durod is not responsible for the payment of the Pension Fund counsel fees.

5. The Pension Fund audit arises from Durod's other non-related pension activities and information concerning this audit has been communicated with the union business agent before and after the audit selection process began.

6. Durod is entitled to its costs and expenses and reasonable counsel fees in this case.

7. The alleged accounting by the Pension Fund is inaccurate and untimely and barred by the applicable period of limitations and laches.

8. Durod delinquency amounts relate to alleged minimum hours for contribution or not actual hours worked on the Big Dig work;

9. Durod is entitled to a credit for amounts paid directly to drivers;

10. Durod is not obligated to make union contributions for non-union employees.

Dated: January 25, 2008                         Respectfully submitted

                                                Plaintiff New England Teamsters
                                                and Trucking Industry Pension Fund
                                                By its Attorneys

                                                /S/ Jonathan M. Conti
                                                Jonathan M. Conti, BBO # 657163
                                                Feinberg, Campbell & Zack, P.C.
                                                177 Milk Street
                                                Boston, MA 02109
                                                (617) 338-1976

Dated: January 25, 2008                         Respectfully Submitted
                                                DUROD, LTD.
                                                By its Counsel

                                                /S/ Robert E. Galvin
                                                Robert E. Galvin, Esq.
                                                Robert W. Galvin, Esq.
                                                10 Enterprise Street, Suite 3
                                                Duxbury, MA  02332-3315
                                                (781) 934-5678
                                                BBO # 184000 REG
                                                BBO # 561397  RWG